# In the United States Court of Federal Claims

**Nos. 20-1925C; 20-1954C**

**Filed: June 14, 2021**
**Redacted Version Issued for Publication: July 11, 2021[1]**

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * | * |
| **PAE APPLIED TECHNOLOGIES, LLC,** | * |
| | * |
| Protestor, | * |
| | * |
| v. | * |
| | * |
| **UNITED STATES,** | * |
| | * |
| Defendant, | * |
| v. | * |
| | * |
| **AMENTUM SERVICES, INC.,** | * |
| | * |
| Defendant-Intervenor. | * |
| * * * * * * * * * * * * * * * * * * | * |
| | * |
| * * * * * * * * * * * * * * * * * * | * |
| | * |
| **JOINT INTEGRATED RANGE SOLUTIONS, LLC,** | * |
| | * |
| Protestor, | * |
| | * |
| v. | * |
| | * |
| **UNITED STATES,** | * |
| | * |
| Defendant, | * |
| v. | * |
| | * |
| **AMENTUM SERVICES, INC.,** | * |
| | * |
| Defendant-Intervenor. | * |
| * * * * * * * * * * * * * * * * * * | * |

---

[1] This Opinion was issued under seal on June 14, 2021. The parties were asked to propose redactions prior to public release of the Opinion. This Opinion is issued with the redactions that the parties proposed in response to the court's request and other conforming redactions. Words which are redacted are reflected with the notation: "[redacted]."

**David Z. Bodenheimer**, Nichols Liu LLP, Washington, DC for PAE Applied Technologies, LLC. With him were **Robert Nichols, Andrew Victor**, and **Sam Van Kopp,** Nichols Liu LLP, Washington, DC.

**Daniel P. Graham**, Vinson & Elkins LLP, Washington, DC for Joint Integrated Range Solutions, LLC. With him were **Ryan D. Stalnaker** and **Alison Schoettler Harmes,** Vinson & Elkins LLP, Washington, DC.

**Borislav Kushnir,** Department of Justice, Washington, DC, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for defendant. With him were **Douglas K. Mickle**, Assistant Director, Commercial Litigation Branch, and **Brian M. Boynton,** Acting Assistant Attorney General, Civil Division. Of counsel were **Richard C. Dale** and **Nikki M. Baade**, Attorneys, Naval Undersea Warfare Center, United States Navy.

**Jason A. Carey**, Covington & Burling LLP, Washington, DC for intervenor. With him were **J. Hunter Bennett, Peter B. Terenzio, III, Andrew R. Guy,** and **Michael W. Pierce,** Covington & Burling LLP, Washington, DC.

## O P I N I O N

### HORN, J.

In the above-captioned, pre-award bid protests, protestor PAE Applied Technologies, LLC (PAE) and protestor Joint Integrated Range Solutions, LLC (JIRS) challenge the decision by the United States Department of the Navy (Navy) to take limited corrective action after making an initial contract award to Amentum Services, Inc. (Amentum). Both protestors argue that the decision to take limited corrective action was arbitrary and capricious. Given the history of the solicitation process in these bid protests, the decision below is based on, and limited to, the specific facts and circumstances at issue in these two bid protests.

### FINDINGS OF FACT

On April 19, 2018, the Navy issued Request for Proposals No. N66604-18-R-0881 (the solicitation), for work to be performed at the Atlantic Undersea Test and Evaluation Center (AUTEC) in the Bahamas, and subsequently issued a series of seven amendments. The solicitation explained that "[u]nderwater research, testing, and evaluation of anti-submarine weapons, sonar tracking and communications are the predominant activities conducted at AUTEC." The solicitation envisioned awarding an indefinite-quantity contract with a mixture of cost reimbursement, cost-plus-award-fee, firm fixed price contract line items (CLINs), with a one year base period and nine one year options. The solicitation explained:

The Government intends to make a single award as a result of this RFP. Award will be made to the responsible Offeror meeting all Pass/Fail requirements of the solicitation and whose proposal contains the combination of those factors offering the best overall value to the Government. The best overall value to the Government will be determined by comparing the difference in value of technical (non-cost/price) features of proposals with the difference in the cost/price to the Government.

The solicitation identified four evaluation factors: Technical, Past Performance, Cost/Price, and Pass/Fail Requirements. The Technical factor was the only one to have subfactors, and the Technical subfactors were: Capabilities, Management Approach, Personnel, Hypothetical Approaches, and Small Business Participation. The solicitation explained that "[t]he relative importance of the subfactors of the Technical factor is as follows: Capabilities, Management Approach and Personnel are of equal importance and each is greater than Hypothetical Approaches which is greater than Small Business Participation." The solicitation also explained:

The relative importance of factors is as follows: Technical is more important than Past Performance. . . . All evaluation factors other than Cost/Price, when combined, are significantly more important than Cost/Price. As competing proposals approach equality in the Non-Cost/Price factors, Cost/Price will increase in importance. Offerors must receive a Pass rating under each Pass/Fail requirement to be eligible for award.

For the Technical factor and the Technical subfactors, the offerors were to be evaluated based on the following adjectival ratings:

| Combined Technical/Risk Ratings | |
|---|---|
| Adjectival Rating | Description |
| Outstanding | Proposal indicates an exceptional approach and understanding of the requirements and contains multiple strengths, and risk of unsuccessful performance is low. |
| Good | Proposal indicates a thorough approach and understanding of the requirements and contains at least one strength, and risk of unsuccessful performance is low to moderate. |
| Acceptable | Proposal meets requirements and indicates an adequate approach and understanding of the requirements and risk of unsuccessful performance is no worse than moderate. |
| Marginal | Proposal has not demonstrated an adequate approach and understanding of the requirements and/or risk of unsuccessful performance is high. |
| Unacceptable | Proposal does not meet requirements of the solicitation, and thus, contains one or more deficiencies, and/or risk of unsuccessful performance is unacceptable. Proposal is unawardable. |

For Past Performance, the solicitation indicated "[t]here are three aspects to the past performance evaluation: recency, relevancy (including context of data), and quality

(including general trends in contractor performance and source of information)." The first aspect is to evaluate the recency of the offeror's past performance," "[t]he second is to determine how relevant a recent effort accomplished by the offeror is to the effort to be acquired through the source selection," and "[t]he third aspect of the past performance evaluation is to establish the overall quality of the Offeror's past performance (see FAR 15.304(c)(2))." The solicitation continued:

> The past performance evaluation conducted in support of a current source selection does not establish, create, or change the existing record and history of the Offeror's past performance on past contracts; rather, the past performance evaluation process gathers information from customers on how well the offeror performed those past contracts. The Government will review all past performance information collected and determine the quality of the Offeror's performance, general trends, and usefulness of the information and incorporate these into the performance confidence assessment. The past performance confidence assessment rating is based on the Offeror's overall record of recency, relevancy, and quality of performance.

> Performance Confidence Assessment. In conducting a performance confidence assessment, each Offeror shall be assigned one of the ratings shown below. (Reference FAR 15.305(2) for information on assigning an unknown/neutral confidence rating.)

| Performance Confidence Assessments | |
|---|---|
| Rating | Description |
| Substantial Confidence | Based on the Offeror's recent/relevant performance record, the Government has a high expectation that the offeror will successfully perform the required effort. |
| Satisfactory Confidence | Based on the offeror's recent/relevant performance record, the Government has a reasonable expectation that the Offeror will successfully perform the required effort. |
| Neutral Confidence | No recent/relevant performance record is available or the offeror's performance record is so sparse that no meaningful confidence assessment rating can be reasonably assigned. The offeror may not be evaluated favorably or unfavorably on the factor of past performance. |
| Limited Confidence | Based on the offeror's recent/relevant performance record, the Government has a low expectation that the offeror will successfully perform the required effort. |
| No Confidence | Based on the offeror's recent/relevant performance record, the Government has no expectation that the offeror will be able to successfully perform the required effort. |

Regarding the Cost/Price Factor, the Navy was to evaluate the cost realism of the cost reimbursement CLINs in accordance with FAR 15.404-1(d), "to include completeness of the cost data, the traceability of the cost to the Offeror's capability data, the proposed allocation of man-hours and labor mix, and the proposed costs' reflection of the Offeror's understanding of the complexity and risk of the requirements." In addition,

the Navy planned to calculate total evaluated cost, based on the sum of the evaluated costs for the cost reimbursement and fixed-price CLINs. The solicitation indicated that:

> This evaluated cost will be used in making an award determination. Therefore, any inconsistencies between proposed technical performance and cost, whether real or apparent, should be explained in the supporting cost data section. . . . Offerors are cautioned that to the extent proposed costs appear unrealistic; the Government may infer either a lack of understanding of the requirements, increased risk of performance, or lack of credibility on the part of the Offeror. In addition, proposals which are unrealistic in terms of technical or schedule commitments or unrealistically high or low in cost may be deemed reflective of an inherent lack of technical competence, or indicative of a failure to comprehend the complexity and risks of the proposed work.

The solicitation further indicated, "[t]he Government intends to award a contract without discussions (except for clarifications as described in FAR 15.306(a)), as permitted by FAR 15.306(a)(3) and FAR 52.215-1."

Initial proposals were due by July 6, 2018, and both protestors and the intervenor all submitted timely proposals. After review of the proposals, the Navy established a competitive range [redacted]. Over a year later, and despite the indication in the solicitation that the Navy did not intend to conduct discussions, the Navy subsequently opened discussions with these three offerors, each of whom received a discussion letter on July 31, 2019, with each of the letters identifying weaknesses in the offerors' initial proposals.

All three offerors responded to the July 31, 2019 discussion letters in August of 2019. Subsequently, the Navy issued additional discussion letters to all three offerors in November 2019. On December 23, 2019, the Navy sent all three offerors a letter, which stated, in part: "The purpose of this letter is to notify you that Discussions are officially closed as of 22 December 2019. Final Proposal Revisions (FPRs) are hereby requested at this time."

On January 22, 2020, all three offerors submitted their final proposal revisions. After receipt of the final proposals, the Source Selection Evaluation Board (SSEB) evaluated the technical proposals of all three offerors and issued a Technical Evaluation Report on April 30, 2020. Subsequently, the Source Selection Advisory Council (SSAC) issued a Source Selection Advisory Council Report on August 7, 2020. The August 7, 2020 Source Selection Advisory Council Report considered the following sources:

(a) Solicitation N66604-l8-R-088l Amendment 0007, dated 23 December 20l9
(b) [redacted]
(c) [redacted]
(d) [redacted]

(e) Source Selection Evaluation Board (SSEB) Technical Evaluation Report Addendum, dated 30 April 2020
(f) [redacted]
(g) [redacted]

The August 7, 2020 Source Selection Advisory Council Report provided an evaluation summary table:

| AUTEC Maintenance and Operations | AECOM [now known as Amentum] | | JIRS | | PAE | |
|---|---|---|---|---|---|---|
| Pass/ Fail Requirements | | | | | | |
| Facility Clearance Level (FCL) | [redacted] | | [redacted] | | [redacted] | |
| Organizational Conflict of Interest (OCI) | [redacted] | | [redacted] | | [redacted] | |
| Factor 1: Technical | [redacted] | | [redacted] | | [redacted] | |
| Subfactor 1: Capabilities | [redacted] | | [redacted] | | [redacted] | |
| Subfactor 2: Management Approach | [redacted] | | [redacted] | | [redacted] | |
| Subfactor 3: Personnel | [redacted] | | [redacted] | | [redacted] | |
| Subfactor 4: Hypothetical Approaches | [redacted] | | [redacted] | | [redacted] | |
| Subfactor 5: Small Business Part. | [redacted] | | [redacted] | | [redacted] | |
| Factor 2: Past Performance | [redacted] | | [redacted] | | [redacted] | |
| Cost/Price | Proposed | Evaluated | Proposed | Evaluated | Proposed | Evaluated |
| | $[redacted] | $[redacted] | $[redacted] | See Note 1[2] | $[redacted] | $[redacted] |

The August 7, 2020 Source Selection Advisory Council Report also included a table for "non-cost" evaluations:

| | Summary Non-Cost Assessments | | | |
|---|---|---|---|---|
| | Subfactors | [redacted] | [redacted] | [redacted] |
| FtSF1 | Capabilities | [redacted] | [redacted] | [redacted] |
| | S/W/SW/D | | | |
| FtSF2 | Management Approach | [redacted] | [redacted] | [redacted] |
| | S/W/SW/D | | | |
| FtSF3 | Personnel | [redacted] | [redacted] | [redacted] |
| | S/W/SW/D | | | |
| FtSF4 | Hypothetical | [redacted] | [redacted] | [redacted] |
| | S/W/SW/D | | | |
| FtSF5 | Small Business | [redacted] | [redacted] | [redacted] |
| | Factor 1: Technical | [redacted] | [redacted] | [redacted] |
| | S/W/SW/D | [redacted] | [redacted] | [redacted] |
| | Factor 2: Past Performance Adjectival Rating | [redacted] | [redacted] | [redacted] |
| | Pass/Fail Evaluation | [redacted] | [redacted] | [redacted] |
| | S/W/SW/D = Strength(s), Weakness(es)/Significant Weakness(es)/Deficiency | | | |

[2] Note 1 to the August 7, 2020 Source Selection Advisory Council Report stated: [redacted]

For Factor 1, the August 7, 2020 Source Selection Advisory Council Report indicated that [redacted]. The report indicated: [redacted]. The August 7, 2020 Source Selection Advisory Council Report noted that [redated]. Regarding the [redacted], the August 7, 2020 Source Selection Advisory Council Report noted that [redacted]

Regarding JIRS, the August 7, 2020 Source Selection Advisory Council Report explained that [redacted]

Regarding PAE, the August 7, 2020 Source Selection Advisory Council Report determined: [redacted]

For past performance, the report stated: "Continuing to follow the RFP evaluation taxonomy from Section M that 'Technical is more important than Past Performance' the SSAC then considered Past Performance. In this case, [redacted]

Following the technical and past performance evaluations, the August 7, 2020 Source Selection Advisory Council Report turned to a trade-off analysis, which included the following table:

|  | AECOM | | JIRS | | PAE | |
|---|---|---|---|---|---|---|
| Factor 1: Technical | [redacted] | | [redacted] | | [redacted] | |
| Factor 2: Past Performance | [redacted] | | [redacted] | | [redacted] | |
|  | Proposed | Evaluated | Proposed | Evaluated | Proposed | Evaluated |
| Cost/Price | $[redacted] | $[redacted] | $[redacted] | See Note 1 under Section 2.0 Evaluation Summary Table above | $[redacted] | $[redacted] |

The August 7, 2020 Source Selection Advisory Council Report first compared Amentum and PAE, and indicated that [redacted]

|  | AECOM | PAE |
|---|---|---|
| Proposed | [redacted] | [redacted] |
| Evaluated | [redacted] | [redacted] |
| Evaluated Premium Dollars | [redacted] | [redacted] |
| Evaluated Premium Percentage | [redacted] | [redacted] |
| Unquantifiable Cost Adjustment | [redacted] | [redacted] |
| Evaluated and Unquantifiable Cost Adjustment | [redacted] | [redacted] |
| Evaluated and Unquantifiable Cost Adjustment Premium Dollars | [redacted] | [redacted] |
| Evaluated and Unquantifiable Cost Adjustment Premium Percentage | [redacted] | [redacted] |

The report stated that [redacted]. Additionally, the report determined, [redacted]

After an evaluation of the Technical factors, the report also examined Cost/Price and noted, [redacted] The trade-off analysis between Amentum and PAE concluded: [redacted]

After concluding that [redacted], the August 7, 2020 Source Selection Advisory Council Report next compared the proposals of Amentum and JIRS in a trade-off analysis. The August 7, 2020 Source Selection Advisory Council Report noted for Technical and Past Performance: [redacted]

As with the comparison between Amentum and PAE, the trade-off analysis between Amentum and JIRS also included a table regarding Cost/Price:

|  | AECOM | JIRS* |
|---|---|---|
| Proposed | [redacted] | [redacted] |
| Evaluated | [redacted] | [redacted] |
| Evaluated Premium Dollars | [redacted] | [redacted] |
| Evaluated Premium Percentage | [redacted] | [redacted] |
| Unquantifiable Cost Adjustment | [redacted] | [redacted] |
| Evaluated and Unquantifiable Cost Adjustment | [redacted] | [redacted] |
| Evaluated and Unquantifiable Cost Adjustment Premium Dollars | [redacted] | [redacted] |
| Evaluated and Unquantifiable Cost Adjustment Premium Percentage | [redacted] | [redacted] |

The table included an asterisk which stated [redacted] The trade-off analysis continued: [redacted] The report concluded regarding the trade-off between Amentum and JIRS: [redacted]

The August 7, 2020 Source Selection Advisory Council Report concluded: [redacted]

Consistent with the recommendation from the Source Selection Advisory Council Report, the Navy ultimately made an award to Amentum on August 24, 2020. PAE and JIRS both protested the Navy's award to Amentum at the United States Government Accountability Office (GAO). On October 5, 2020, PAE filed a complaint in the United States Court of Federal Claims, and on the same day, October 5, 2020, JIRS also filed a complaint in this court. On October 7, 2020, after being notified of the protests filed at the United States Court of Federal Claims, the GAO dismissed PAE's and JIRS' GAO protests.

PAE's Initial Bid Protest Complaint in this Court, Case No. 20-1324C

PAE's October 5, 2020, first bid protest complaint, Case No. 20-1324C, raised nine counts: Count 1 stated that Navy applied unstated evaluation criteria in PAE's Contractor-Owned Housing proposal. Count 2 stated that for PAE's Contractor Housing and Recruitment and Retention Plan the Navy applied unstated evaluation criteria. Relatedly, Count 3 claimed that the Navy treated PAE's and Amentum's Contractor Housing and Recruitment and Retention Plans unequally, as [redacted] In doing so, the Navy applied unstated evaluation criteria." Moreover, PAE claimed that the Navy did not apply the same evaluation standard to Amentum's proposal. Count 4 alleged that the Navy's technical evaluation was flawed because "[t]he Navy [redacted]," and "[t]he Navy [redacted], as evidenced by [redacted] However, the Navy failed to perform a complete comparative analysis of PAE's and Amentum's strengths and weaknesses."

PAE's Count 5 claimed the evaluation of its cost proposal was arbitrary and capricious because the "Navy erroneously evaluated PAE's cost proposal in several ways, such as by making unfounded upward adjustments to PAE's wage rates and escalation rate, irrationally double counting PAE's hours for PWS [Performance Work Statement] elements for which the RFP provided no workload data," and the Navy allegedly mischaracterized "[redacted]." PAE further claimed that "[t]he Navy miscalculated PAE's wage rates in its cost proposal and upwardly adjusted PAE's offer to reflect this miscalculation." PAE stated there was no basis to adjust PAE's wage rates or escalation rates. In sum, PAE alleged that "the Navy misevaluated PAE's cost proposal by upwardly adjusted [sic] PAE's proposed cost by [redacted] Count 6 alleged that the discussions regarding the cost proposal were misleading and not meaningful. Count 7 claimed that the agency treated the offerors unequally as it related to the cost proposals, and "[b]y requiring offerors to estimate labor hours for the RFP's 15 zero-hour labor categories without labor hour data from the Navy, the Navy required offerors to provide proposals based on their own assumptions of the requirements of those labor categories." In Count 8, PAE raised a best value claim, alleging that because the best value was based on a flawed evaluation, the best value analysis was arbitrary and capricious.

Finally, Count 9 in PAE complaint stated that "the Navy did not evaluate Awardee Amentum in its current corporate form" and alleges that "[t]he Navy received initial proposals, conducted discussions, and received final proposals from offeror AECOM Management Solutions, a corporate entity that was acquired and reorganized as the Navy was evaluating offeror's final proposal." Therefore, according to PAE, the Navy could not properly evaluate the awardee "since Amentum was not formed until after FPRs [Final Proposal Revisions] were submitted, and since Amentum was reorganizing AECOM's assets even as the Navy was attempting to conduct its evaluation."

<u>JIRS' Initial Bid Protest Complaint in this Court, Case No. 20-1325C</u>

JIRS' October 5, 2020 first bid protest complaint, Case No. 20-1325C, raised six counts, some of which were similar to the counts in PAE's complaint in Case No. 20-1324C. The first count in JIRS' complaint challenged the Navy's cost realism evaluation, with JIRS alleging that "the Navy performed a superficial, incomplete cost realism evaluation that distorted not only the relative evaluated cost of the proposals, but the relative technical understanding of the offerors." Count 2 and Count 3 in JIRS' complaint alleged the Navy's discussions with JIRS were misleading and not meaningful. Count 2 alleged that the "Navy did not conduct meaningful discussions with JIRS regarding the evaluated flaws in its proposal nor did the Navy provide JIRS with a meaningful opportunity to address perceived issues with its proposal and increase its chances of winning the award." For Count 3, JIRS also alleged that "[i]n addition to misleading JIRS regarding the Navy's concern with [redacted], the Navy also failed to conduct meaningful discussions with JIRS because it failed to inform JIRS that it found JIRS's [redacted]."

Count 4 and Count 5 in JIRS' complaint alleged that the Navy's decision [redacted] was arbitrary and capricious. First, in Count 4, regarding [redacted] JIRS alleged [redacted] In Count 5, regarding [redacted] Finally, for Count 6, JIRS raised a best value claim, and JIRS alleged that the "Navy's best value analysis was based on a flawed evaluation and therefore is arbitrary, capricious, an abuse of discretion, and not in accordance with law."

Approximately one month after the earlier protests were filed in this court, on November 2, 2020, the government filed a notice with the court indicating that that the Navy

intends to take corrective action in this case, starting on November 20, 2020, at which time the Navy intends to issue new discussion letters to all three offerors in the competitive range for the purpose of requesting new cost proposals. The Navy's cost analysts will evaluate the new cost proposals. Following that cost evaluation, the Source Selection Advisory Council (SSAC) will issue a new recommendation, and the contracting officer will conduct a new best-value determination, in accordance with the solicitation's requirements, to make a new source-selection decision based upon the results of that determination.

The same day the defendant filed the notice, the court held a hearing with all the parties to discuss the defendant's notice. At the hearing, the government reiterated the defendant's belief of the need to take corrective action and for the corrective action process to be undertaken. The defendant also indicated that the award to AECOM would be cancelled. Thereafter, the court dismissed the bid protests in Case Nos. 20-1324C and Case 20-1325C, without prejudice, and the Clerk of Court entered judgments in both protests on November 2, 2020.

After the dismissals, the Navy issued corrective action discussion letters dated December 7, 2020 to each of the three offerors. The December 7, 2020 corrective action discussion letters stated:

> The purpose of this letter is to notify you that due to the receipt of protests to the award of contract N66604-20-C-0881, the Navy is taking Corrective Action. Final Proposal Revisions (FPRs) are being requested by Offerors remaining in the Competitive Range. The FPR requested is for a "Cost" proposal only. Enclosure (1) contains the Discussion Topics to which Offerors shall respond in their Final Proposal Revisions.
>
> Offerors are not being afforded the opportunity to revise any portion of its Technical proposal or technical approach. The Offeror's Technical Proposal and approach, as submitted on 22 January 2020, will form the basis of the Government's final source selection. The technical FPR shall not be revised, nor resubmitted. The Government will not open or evaulate [sic] any revised technical FPRs. The deadline for the submission of Cost FPRs is 18 December 2020 by 2:00 PM Eastern Standard Time.[3] FPRs must be received by this date and time or they will not be considered in the final source selection.
>
> . . .
>
> Responses must be signed by an authorized representative of the Offeror, and only that information contained within the FPR will be considered in the Government's evaluation (i.e., **information contained within an Offeror's response to the Discussion questions or the previous 22 January 2020 Cost FPR submission will not be evaluated if it is not included in the FPR**.) Once the FPRs are submitted, the Government intends to make award without obtaining further revisions.

(capitalization and emphasis in original).

In response to the Navy's December 7, 2020 letters, PAE filed a second, pre-award bid protest on December 21, 2020, which was assigned Case No. 20-1925C and JIRS

---

[3] The contracting officer subsequently extended the deadline until December 23, 2020, 2:00 p.m., EST.

subsequently also filed a second, pre-award bid protest on December 22, 2020, which was assigned Case No. 20-1954C.

PAE's Current Bid Protest Complaint in Case No. 20-1925C

PAE's December 21, 2020 pre-award bid protest in the United States Court of Federal Claims, which is currently under review, seeks injunctive relief "requiring the Navy to: (1) to cancel its corrective action limiting proposal revisions and evaluation to cost issues only; and (2) re-open discussions on both cost and technical issues, obtain revised cost and technical proposals, and make a new source selection and award decision based upon these revised proposals." In Count 1 of its current, bid protest complaint, PAE argues that the Navy cannot conduct a lawful cost realism analysis because"[b]y limiting proposal revisions to cost proposals only for its corrective action, the Navy prevents legal compliance with FAR § 15.404-1(d) that requires consistency between cost and technical proposals as an integral part of the mandated cost realism analysis." PAE also states that "an offeror cannot update its cost proposal without also making conforming revisions to its technical proposal." Specifically, PAE claims that "[b]y limiting proposal revisions to cost proposals only for its corrective action, the Navy prevents offerors from updating the labor mix in the technical proposal to be consistent with the cost proposal updates," and "[w]ithout revisions to both the cost and technical proposals, the Navy's corrective action is essentially meaningless because the offerors cannot make changes to the cost proposal that are tied to the technical proposal. For this additional reason, the Navy's corrective action lacks a rational basis."

In Count 2 of its current pre-award bid protest complaint, PAE argues that the Navy's limited corrective action lacks a rational basis, because the notice of corrective action "fails to state any reason for limiting corrective action only to cost proposal updates. On this record, the Navy lacks a rational basis for barring technical proposal updates and limiting proposal submissions to the cost proposal only." (internal citation omitted). PAE notes that, pursuant to the RFP, the Technical factor is the most important evaluation factor, and "[b]y forbidding revised technical proposals, the Navy renders technical capabilities and approaches a non-factor during this round of competition, forcing offerors to compete on cost only." Moreover, the proposals are be evaluated using a best value tradeoff approach and protestor argues by "barring revied [sic] technical proposals, the Navy prevents the offerors from competing on both cost and technical factors to assure that the Government receives the best value of these factors. The Navy's corrective action lacks a rational basis because it is contrary to a best-value competition."

In Count 3 of its current, pre-award bid protest complaint, PAE argues that the discussions for cost only were not "meaningful or lawful." PAE continues:

> The Navy's cost-only discussions conflict with this regulatory objective by limiting the offerors to a cost competition for this last round of proposals, rather than a best-value combination of improved prices and better technical approaches. Given the passage of nearly a year [at the time of the filing of PAE's December 21, 2020 pre-award bid protest] since the last technical

proposal updates, the Navy's cost-only corrective action cannot assure "the Government's ability to obtain best value."

Finally, in Count 4 of PAE's current, bid protest complaint, PAE alleges that the "RFP must be amended to address significant changes and issues." Specifically, PAE argues "AUTEC tasks, requirements, and workload data needs to be updated to address the COVID-19 impact." Finally, PAE argues that "the RFP requirements need to be amended to reflect the current plan for contractor housing, including demolishing current trailer housing."

<u>JIRS' Current Bid Protest Complaint in Case No. 20-1954C</u>

JIRS' December 22, 2020 pre-award bid protest in the United States Court of Federal Claims, the protest currently under review regarding the Navy's corrective action, also requests the court to issue a "permanent injunction enjoining the Navy from making an award without conducting discussions and soliciting revised technical and cost proposals in a fair, impartial, and reasonable manner." Count 1 of JIRS' current, pre-award bid protest complaint argues that the "Navy's limited corrective action unfairly and impermissibly favors Amentum over JIRS," because by "denying JIRS any opportunity to revise its technical proposal, the Navy's limited corrective action artificially preserves [redacted]." JIRS additionally contends that "[t]he Navy's corrective action provides no opportunity for [redacted]." JIRS also contends that the Navy's corrective action "does not allow offerors to meaningfully revise their cost proposals. The Solicitation contemplates that labor will be furnished on a cost-reimbursement basis, and therefore JIRS can only make substantial changes to its proposed cost by altering the labor mix in its technical proposal, which JIRS is prohibited from doing."

For Count 2 of JIRS' current, pre-award bid protest complaint, JIRS claims that the prior technical discussions with JIRS "were misleading and not meaningful," arguing that the "Navy's 2019 discussions failed to alert JIRS to the true nature of the concerns that resulted in the Navy assigning [redacted]." JIRS argues that "[i]n order for discussions to be meaningful (and not misleading), the Navy was required to inform JIRS that its real concern related to [redacted] and to permit JIRS a meaningful opportunity to respond to that concern," but that "[t]he Navy failed to do so, and seeks to perpetuate that error by limiting corrective action to revised cost proposals and prohibiting JIRS from responding to the Navy's true concerns." Finally, in Count 3 of its current, pre-award bid protest complaint, JIRS argues that the Navy "must amend the Solicitation to address changes to its requirements and solicit revised proposals," and points to the allegations raised by PAE as the incumbent contractor. JIRS, quoting from PAE's pre-award bid protest complaint in Case No. 20-1925C, alleges "PAE alleges that the Navy's information technology staffing requirements have changed due to the migration of data 'from the AUTECNet system to the Navy/Marine Corps Internet (NMCI) and NAVSEA Research Engineering Network (NREN) Navy computer systems, thus resulting in outdated workload data and IT tasks in the current RFP.'" (capitalization in original). JIRS concludes: "JIRS believes that PAE's allegations are correct because, as the incumbent, PAE is in the best position to know if the Navy's requirements have changed."

On December 23, 2020, the court held a hearing in the above captioned, current pre-award bid protests, and set a schedule for briefing cross-motions for judgment on the Administrative Record. In PAE's motion for judgment on the Administrative Record, in keeping with its complaint, PAE first argues that "[t]he Navy's limited corrective action violated the RFP criteria," and also argues that "[t]he Navy's limited corrective action treated offerors disparately." Consistent with PAE's current, bid protest complaint, PAE argues "[t]he Navy's cost-only discussions are not meaningful or lawful," and "[t]he RFP must be amended to address significant changes and issues." PAE further argues that "PAE is entitled to injunctive relief," and requests that the "Navy's actions be enjoined pending resolution of this protest and any subsequent corrective action."

Consistent with its current pre-award bid protest complaint, JIRS argues in its motion for judgment on the Administrative Record, "[t]he Navy's limited corrective action unfairly and impermissibly favors Amentum over JIRS," and specifically, that "[t]he Navy is unfairly addressing every aspect of Amentum's proposal that was identified as a Weakness and that could be improved but is not giving the other offerors a similar opportunity to improve their proposals." JIRS also argues that "[t]he Navy must solicit revised technical proposals because the Navy's prior technical discussions with JIRS were misleading and not meaningful." JIRS, therefore, argues that "[t]he court should issue a permanent injunction directing the Navy to solicit revised technical proposals."

In response, defendant argues that "[t]he Navy's corrective action did not violate any statute or regulation," and the Navy's cross-motion for judgment on the Administrative Record emphasized that "[t]he Navy already conducted proper discussions regarding technical proposals with all offerors." Additionally, defendant argues that "[t]he Navy's corrective action satisfies rational basis review," and claims that the Navy "articulated a coherent and reasonable explanation" for the corrective action it selected, and moreover, "[t]he Navy's limited corrective action treats all offerors equally."

In its cross-motion for judgment on the Administrative Record, intervenor similarly argues "[t]he Navy's corrective action was rational," contending that "[t]he Navy reasonably decided to limit discussions and accept revised cost proposals only," and further argues that "[t]he Navy's corrective action treats offers fairly and equally." Specifically regarding PAE, intervenor states "PAE's challenges to the corrective action are meritless." According to intervenor, "PAE argues that limiting discussions to Cost proposals improperly 'favored Amentum' by allowing it to fix a 'disqualifying defect,' while prohibiting PAE from addressing any of its technical issues," but intervenor argues that "PAE is not being treated differently or less favorably than Amentum. The Navy's corrective action treats all three offerors fairly and equally." Regarding JIRS, intervenor argues "JIRS has no basis to claim that the Navy's corrective action was too narrow, and no basis to demand a broader reopening," because "JIRS makes no attempt to argue that the Cost issues the Navy identified during discussions have a material effect on its Technical proposal." Further, Amentum argues "[w]ith the law and facts squarely against it, JIRS attempts to sow confusion. Indeed, one would be hard-pressed to find a coherent description of the Navy's corrective action anywhere in JIRS's filing." After the parties fully

briefed the cross-motions for judgment on the Administrative Record, the court held oral argument in the current, pre-award bid protests.

**DISCUSSION**

Both PAE and JIRS have filed motions for judgment on the Administrative Record and both protestors also seek injunctive relief. As described above, both PAE and JIRS challenge the Navy's decision to take only limited corrective action, with PAE arguing that "[t]he Navy's limited corrective action lacks a rational basis," and JIRS arguing that the Navy's actions were "arbitrary, capricious, an abuse of discretion, and not in accordance with law." Rule 52.1(c)(1) (2020) of the Rules of the United States Court of Federal Claims (RCFC) governs motions for judgment on the administrative record. The court's inquiry is directed to "'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" Mgmt. & Training Corp. v. United States, 115 Fed. Cl. 26, 40 (2014) (quoting A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006); see also Superior Optical Labs, Inc. v. United States, 150 Fed. Cl. 681, 691 (2020) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356-57 (Fed. Cir. 2005)); AAR Manufacturing, Inc. v. United States, 149 Fed. Cl. 514, 522 (2020); Glocoms, Inc. v. United States, 149 Fed. Cl. 725, 731 (2020); Centerra Grp., LLC v. United States, 138 Fed. Cl. 407, 412 (2018) (citing Bannum, Inc. v. United States, 404 F.3d at 1356-57); Informatics Applications Grp., Inc. v. United States, 132 Fed. Cl. 519, 524 (2017) (citation omitted); Strategic Bus. Sols., Inc. v. United States, 129 Fed. Cl. 621, 627 (2016), aff'd, 711 F. App'x 651 (Fed. Cir. 2018); Pursuant to RCFC 52.1, in a bid protest, the court reviews the agency's procurement decision to determine whether it is supported by the administrative record. See CW Gov't Travel, Inc. v. United States, 110 Fed. Cl. 462, 481 (2013); see also CR/ZWS LLC v. United States, 138 Fed. Cl. 212, 223 (2018) (citing Bannum, Inc. v. United States, 404 F.3d at 1353-54).

The Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, §§ 12(a), 12(b), 110 Stat. 3870, 3874 (1996) (codified at 28 U.S.C. § 1491(b)(1)–(4)), amended the Tucker Act to establish a statutory basis for bid protests in the United States Court of Federal Claims. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1330-32 (Fed. Cir. 2001); see also Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1380 (Fed. Cir. 2012) (explaining that the Tucker Act expressly waives sovereign immunity for claims against the United States in bid protests). The statute provides that protests of agency procurement decisions are to be reviewed under APA standards, making applicable the standards outlined in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), and the line of cases following that decision. See, e.g., Per Aarsleff A/S v. United States, 829 F.3d 1303, 1309 (Fed. Cir. 2016) ("Protests of agency procurement decisions are reviewed under the standards set forth in the Administrative Procedure Act ('APA'), see 28 U.S.C. § 1491(b)(4) (citing 5 U.S.C. § 706), 'by which an agency's decision is to be set aside only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]'" (quoting NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004)) (citing PAI Corp. v. United States, 614 F.3d 1347, 1351 (Fed. Cir. 2010))); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332; Res. Conservation Grp., LLC v. United States,

597 F.3d 1238, 1242 (Fed. Cir. 2010) ("Following passage of the APA in 1946, the District of Columbia Circuit in <u>Scanwell Labs., Inc. v. Shaffer</u>, 424 F.2d 859 (D.C. Cir. 1970), held that challenges to awards of government contracts were reviewable in federal district courts pursuant to the judicial review provisions of the APA."); <u>Galen Med. Assocs., Inc. v. United States</u>, 369 F.3d 1324, 1329 (Fed. Cir.) (citing <u>Scanwell Labs., Inc. v. Shaffer</u>, 424 F.2d at 864, 868, for its "reasoning that suits challenging the award process are in the public interest and disappointed bidders are the parties with an incentive to enforce the law"), <u>reh'g</u> <u>denied</u> (Fed. Cir. 2004). In <u>Banknote Corp. of Am., Inc. v. United States</u>, 365 F.3d 1345 (Fed. Cir. 2004), the Federal Circuit explained that "[u]nder the APA standard as applied in the <u>Scanwell</u> line of cases, and now in ADRA cases, 'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" <u>Id.</u> at 1351 (quoting <u>Impresa Construzioni Geom. Domenico Garufi v. United States</u>, 238 F.3d at 1332)); <u>see</u> <u>also</u> <u>Palantir USG, Inc. v. United States</u>, 904 F.3d 980, 990 (Fed. Cir. 2018); <u>AgustaWestland North Am., Inc. v. United States</u>, 880 F.3d 1326, 1332 (Fed. Cir. 2018); <u>Info. Tech. & Applications Corp. v. United States</u>, 316 F.3d at 1319.

When discussing the appropriate standard of review for bid protest cases, the United States Court of Appeals for the Federal Circuit addressed subsections (2)(A) and (2)(D) of 5 U.S.C. § 706, <u>see</u> <u>Impresa Construzioni Geom. Domenico Garufi v. United States</u>, 238 F.3d at 1332 n.5, but focused its attention primarily on subsection (2)(A). <u>See</u> <u>Croman Corp. v. United States</u>, 724 F.3d 1357, 1363 (Fed. Cir.) ("'[T]he proper standard to be applied [to the merits of] bid protest cases is provided by 5 U.S.C. § 706(2)(A) [(2006)]: a reviewing court shall set aside the agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."'" (alterations in original) (quoting <u>Banknote Corp. of Am. v. United States</u>, 365 F.3d at 1350-51 (citing <u>Advanced Data Concepts, Inc. v. United States</u>, 216 F.3d 1054, 1057-58 (Fed. Cir.), <u>reh'g</u> <u>denied</u> (Fed. Cir. 2000)))), <u>reh'g</u> and <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u> (Fed. Cir. 2013). The statute says that agency procurement actions should be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D) (2018);[4] <u>see</u> <u>also</u> <u>Veterans</u>

---

[4] The language of 5 U.S.C. § 706 provides in full:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

Contracting Grp., Inc. v. United States, 920 F.3d 801, 806 (Fed. Cir. 2019) ("In a bid protest, we follow Administrative Procedure Act § 706 and set aside agency action 'if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting Palladian Partners, Inc. v. United States, 783 F.3d 1243, 1252 (Fed. Cir. 2015)); Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d 1353, 1358 (Fed. Cir. 2015); Orion Tech., Inc. v. United States, 704 F.3d 1344, 1347 (Fed. Cir. 2013); COMINT Sys. Corp. v. United States, 700 F.3d 1377, 1381 (Fed. Cir. 2012) ("We evaluate agency actions according to the standards set forth in the Administrative Procedure Act; namely, for whether they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 5 U.S.C. § 706(2)(A); and Bannum, Inc. v. United States, 404 F.3d at 1351)); Savantage Fin. Servs. Inc., v. United States, 595 F.3d 1282, 1285-86 (Fed. Cir. 2010); Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1358 (Fed. Cir. 2009); Axiom Res. Mgmt., Inc. v. United States, 564 F.3d at 1381 (noting arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A), and reaffirming the analysis of Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332); Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1312 (Fed. Cir. 2007) ("'[T]he inquiry is whether the [government]'s procurement decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."'" (quoting Bannum, Inc. v. United States, 404 F.3d at 1351 (quoting 5 U.S.C. § 706(2)(A (2000)))); NVT Techs., Inc. v. United States, 370 F.3d at 1159 ("Bid protest actions are subject to the standard of review established under section 706 of title 5 of the Administrative Procedure Act ('APA'), 28 U.S.C. § 1491(b)(4) (2000), by which an agency's decision is to be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A) (2000)." (internal citations omitted)); Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319 ("Consequently, our inquiry is whether the Air Force's procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A) (2000)."); Synergy Sols., Inc. v. United States, 133 Fed. Cl. 716, 734 (2017) (citing Banknote Corp. of Am. v. United States, 365 F.3d at 1350); Eco Tour Adventures, Inc. v. United States, 114 Fed. Cl. at 22; Contracting, Consulting, Eng'g LLC v. United States, 104 Fed. Cl. 334, 340 (2012). "In a bid protest case, the agency's award must be upheld unless it is 'arbitrary, capricious, an abuse of

---

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

discretion, or otherwise not in accordance with law.'" Turner Constr. Co. v. United States, 645 F.3d 1377, 1383 (Fed. Cir.) (quoting PAI Corp. v. United States, 614 F.3d at 1351), reh'g en banc denied (Fed. Cir. 2011); see also Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d at 1358 ("In applying this [arbitrary and capricious] standard to bid protests, our task is to determine whether the procurement official's decision lacked a rational basis or the procurement procedure involved a violation of a regulation or procedure." (citing Savantage Fin. Servs., Inc. v. United States, 595 F.3d at 1285-86)); Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2013); McVey Co., Inc. v. United States, 111 Fed. Cl. 387, 402 (2013) ("The first step is to demonstrate error, that is, to show that the agency acted in an arbitrary and capricious manner, without a rational basis or contrary to law."); PlanetSpace, Inc. v. United States, 92 Fed. Cl. 520, 531-32 ("Stated another way, a plaintiff must show that the agency's decision either lacked a rational basis or was contrary to law." (citing Weeks Marine, Inc. v. United States, 575 F.3d at 1358)), subsequent determination, 96 Fed. Cl. 119 (2010).

The United States Supreme Court has identified sample grounds which can constitute arbitrary or capricious agency action:

> [W]e will not vacate an agency's decision unless it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 658 (2007) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)); see also F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 552 (2009); Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d at 1358; Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009), reh'g and reh'g en banc denied (Fed. Cir. 2010); In re Sang Su Lee, 277 F.3d 1338, 1342 (Fed. Cir. 2002) ("[T]he agency tribunal must present a full and reasoned explanation of its decision. . . . The reviewing court is thus enabled to perform meaningful review . . . ."); Textron, Inc. v. United States, 74 Fed. Cl. 277, 285-86 (2006), appeal dismissed sub nom. Textron, Inc. v. Ocean Technical Servs., Inc., 223 F. App'x 974 (Fed. Cir. 2007). The United States Supreme Court also has cautioned, however, that "courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA." Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 654 (1990).

Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43 ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."); see also Dell Fed. Sys., L.P. v. United

States, 906 F.3d 982, 990 (Fed. Cir. 2018); Turner Constr. Co., Inc. v. United States, 645 F.3d at 1383; R & W Flammann GmbH v. United States, 339 F.3d 1320, 1322 (Fed. Cir. 2003) (citing Ray v. Lehman, 55 F.3d 606, 608 (Fed. Cir.), cert. denied, 516 U.S. 916 (1995)); Synergy Sols., Inc. v. United States, 133 Fed. Cl. at 735 (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332-33). """If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.""" Weeks Marine, Inc. v. United States, 575 F.3d at 1371 (quoting Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971))); Limco Airepair, Inc. v. United States, 130 Fed. Cl. 544, 550 (2017) (citation omitted); Jordan Pond Co., LLC v. United States, 115 Fed. Cl. 623, 631 (2014); Davis Boat Works, Inc. v. United States, 111 Fed. Cl. 342, 349 (2013); Norsat Int'l [America], Inc. v. United States, 111 Fed. Cl. 483, 493 (2013); HP Enter. Servs., LLC v. United States, 104 Fed. Cl. 230, 238 (2012); Vanguard Recovery Assistance v. United States, 101 Fed. Cl. 765, 780 (2011).

Stated otherwise by the United States Supreme Court:

Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) (internal citations omitted), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977); see also U.S. Postal Serv. v. Gregory, 534 U.S. 1, 6-7 (2001); Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974), reh'g denied, 420 U.S. 956 (1975); Co-Steel Raritan, Inc. v. Int'l Trade Comm'n, 357 F.3d 1294, 1309 (Fed. Cir. 2004) (In discussing the "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law" standard, the Federal Circuit stated: "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency."); In re Sang Su Lee, 277 F.3d at 1342; Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1058 ("The arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. at 285)); Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d 955, 959 (Fed. Cir. 1993); ); Sys. Studies & Simulation, Inc. v. United States, 146 Fed. Cl. 186, 199 (2019); By Light Prof'l IT Servs., Inc. v. United States, 131 Fed. Cl. 358, 366 (2017); BCPeabody Constr. Servs., Inc. v. United States, 112 Fed. Cl. 502, 508 (2013) ("The court 'is not empowered to substitute its judgment for that of the agency,' and it must uphold an agency's decision against a challenge if the 'contracting agency provided a coherent and reasonable explanation of its exercise of

discretion.'" (internal citations omitted) (quoting <u>Keeton Corrs., Inc. v. United States</u>, 59 Fed. Cl. 753, 755, <u>recons. denied</u>, 60 Fed. Cl. 251 (2004); and <u>Axiom Res. Mgmt., Inc. v. United States</u>, 564 F.3d at 1381)), <u>appeal dismissed</u>, 559 F. App'x 1033 (Fed. Cir. 2014); <u>Supreme Foodservice GmbH v. United States</u>, 109 Fed. Cl. at 382; <u>Alamo Travel Grp., LP v. United States</u>, 108 Fed. Cl. 224, 231 (2012); <u>ManTech Telecomms. & Info. Sys. Corp. v. United States</u>, 49 Fed. Cl. 57, 63 (2001), <u>aff'd</u>, 30 F. App'x 995 (Fed. Cir. 2002).

> According to the United States Court of Appeals for the Federal Circuit:
>
> Effective contracting demands broad discretion. <u>Burroughs Corp. v. United States</u>, 223 Ct. Cl. 53, 617 F.2d 590, 598 (1980); <u>Sperry Flight Sys. Div. v. United States</u>, 548 F.2d 915, 921, 212 Ct. Cl. 329 (1977); <u>see NKF Eng'g, Inc. v. United States</u>, 805 F.2d 372, 377 (Fed. Cir. 1986); <u>Tidewater Management Servs., Inc. v. United States</u>, 573 F.2d 65, 73, 216 Ct. Cl. 69 (1978); <u>RADVA Corp. v. United States</u>, 17 Cl. Ct. 812, 819 (1989), <u>aff'd</u>, 914 F.2d 271 (Fed. Cir. 1990). Accordingly, agencies "are entrusted with a good deal of discretion in determining which bid is the most advantageous to the Government." <u>Tidewater Management Servs.</u>, 573 F.2d at 73, 216 Ct. Cl. 69.

<u>Lockheed Missiles & Space Co. v. Bentsen</u>, 4 F.3d at 958-59; <u>see also Res-Care, Inc. v. United States</u>, 735 F.3d 1384, 1390 (Fed. Cir.) ("DOL [Department of Labor], as a federal procurement entity, has 'broad discretion to determine what particular method of procurement will be in the best interests of the United States in a particular situation.'" (quoting <u>Tyler Constr. Grp. v. United States</u>, 570 F.3d 1329, 1334 (Fed. Cir. 2009))), <u>reh'g en banc denied</u> (Fed. Cir. 2014); <u>Grumman Data Sys. Corp. v. Dalton</u>, 88 F.3d 990, 995 (Fed. Cir. 1996); <u>Geo-Med, LLC v. United States</u>, 126 Fed. Cl. 440, 449 (2016); <u>Cybertech Grp., Inc. v. United States</u>, 48 Fed. Cl. 638, 646 (2001) ("The court recognizes that the agency possesses wide discretion in the application of procurement regulations."); Furthermore, according to the United States Court of Appeals for the Federal Circuit:

> Contracting officers "are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." <u>Impresa Construzioni Geom. Domenico Garufi v. United States</u>, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (internal quotation marks omitted). Accordingly, procurement decisions are subject to a "highly deferential rational basis review." <u>CHE Consulting, Inc. v. United States</u>, 552 F.3d 1351, 1354 (Fed. Cir. 2008) (internal quotation marks omitted).

<u>PAI Corp. v. United States</u>, 614 F.3d at 1351; <u>see also AgustaWestland N. Am., Inc. v. United States</u>, 880 F.3d at 1332 ("Where, as here, a bid protester challenges the procurement official's decision as lacking a rational basis, we must determine whether 'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion,' recognizing that 'contracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process.'" (quoting <u>Impresa Construzioni Geom. Domenico Garufi v. United States</u>, 238 F.3d at 1332-33 (internal

quotation marks and citation omitted))); <u>Weeks Marine, Inc. v. United States</u>, 575 F.3d at 1368-69 ("We have stated that procurement decisions 'invoke [ ] "highly deferential" rational basis review.' Under that standard, we sustain an agency action 'evincing rational reasoning and consideration of relevant factors.'" (alteration in original) (quoting <u>CHE Consulting, Inc. v. United States</u>, 552 F.3d at 1354 (quoting <u>Advanced Data Concepts, Inc. v. United States</u>, 216 F.3d at 1058))).

"Contracting officers 'are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process,'" <u>PAI Corp. v. United States</u>, 614 F.3d at 1351 (quoting <u>Impresa Construzioni Geom. Domenico Garufi v. United States</u>, 238 F.3d at 1332), and "[a]ccordingly, procurement decisions are subject to a 'highly deferential rational basis review.'" <u>Id.</u> (quoting <u>CHE Consulting, Inc. v. United States</u>, 552 F.3d at 1354 (Fed. Cir. 2008) (internal quotation marks omitted). As recently explained by a Judge of the United States Court of Federal Claims, "'[i]dentical review standards apply under the APA in the context of a sole-source award.'" <u>Utech Prod. v. United States</u>, 148 Fed. Cl. 542, 549 (2020) (quoting <u>Emery Worldwide Airlines, Inc. v. United States</u>, 264 F.3d 1071, 1086 (Fed. Cir. 2001)).

When the contracting officer's discretion grows, so does the burden on the protestor. As noted in <u>D & S Consultants, Inc. v. United States</u>:

> The protestor's burden becomes more difficult the greater the degree of discretion vested in the contracting officer. <u>DynCorp Int'l v. United States</u>, 76 Fed. Cl. 528, 537 (2007). Negotiated procurements afford the contracting officer a "breadth of discretion;" "best-value" awards afford the contracting officer additional discretion. <u>Id.</u> Therefore, in a negotiated, best-value procurement, the "protestor's burden is especially heavy." <u>Id.</u>

<u>D & S Consultants, Inc. v. United States</u>, 101 Fed. Cl. 23, 33 (2011), <u>aff'd</u>, 484 F. App'x 558 (Fed. Cir. 2012); <u>see also</u> <u>Galen Med. Assocs., Inc. v. United States</u>, 369 F.3d at 1330 (noting that contracting officers have great discretion in negotiated procurements but even greater discretion in best-value determinations than in procurements based on cost alone); <u>PHT Supply Corp. v. United States</u>, 71 Fed. Cl. 1, 11 (2006) ("It is critical to note that 'a protestor's burden is particularly great in negotiated procurements because the contracting officer is entrusted with a relatively high degree of discretion, and greater still, where, as here, the procurement is a "best-value" procurement.'" (citations omitted)). "It is well-established that contracting officers have a great deal of discretion in making contract award decisions, particularly when, as here, the contract is to be awarded to the bidder or bidders that will provide the agency with the best value." <u>Banknote Corp. of Am. Inc. v. United States</u>, 365 F.3d at 1355 (citing <u>TRW, Inc. v. Unisys Corp.</u>, 98 F.3d at 1327-28; <u>E.W. Bliss Co. v. United States</u>, 77 F.3d at 449; <u>Lockheed Missiles & Space Co. v. Bentsen</u>, 4 F.3d at 958–59); <u>see also</u> <u>Am. Tel. & Tel. Co. v. United States</u>, 307 F.3d at 1379; <u>Lockheed Missiles & Space Co. v. Bentsen</u>, 4 F.3d at 958; <u>Brooks Range Contract Servs., Inc. v. United States</u>, 101 Fed. Cl. 699, 707 (2011) ("[A] plaintiff's burden 'is elevated where the solicitation contemplates award on a "best value" basis.'" (internal citations omitted)); <u>Matt Martin Real Estate Mgmt. LLC v. United States</u>, 96 Fed. Cl. 106,

113 (2010); <u>Serco v. United States</u>, 81 Fed. Cl. 463, 496 (2008) ("To be sure, as noted at the outset, plaintiffs have a significant burden of showing error in that regard because a court must accord considerable deference to an agency's best-value decision in trading off price with other factors.").

A disappointed bidder has the burden of demonstrating the arbitrary and capricious nature of the agency decision by a preponderance of the evidence. <u>See</u> <u>Tinton Fall Lodging Realty, LLC v. United Sates</u>, 800 F.3d at 1364; <u>see</u> <u>also</u> <u>Grumman Data Sys. Corp. v. Dalton</u>, 88 F.3d at 995-96; <u>Enhanced Veterans Sols., Inc. v. United States</u>, 131 Fed. Cl. 565, 578 (2017); <u>Davis Boat Works, Inc. v. United States</u>, 111 Fed. Cl. at 349; <u>Contracting, Consulting, Eng'g LLC v. United States</u>, 104 Fed. Cl. at 340. The Federal Circuit has indicated that "[t]his court will not overturn a contracting officer's determination unless it is arbitrary, capricious, or otherwise contrary to law. To demonstrate that such a determination is arbitrary or capricious, a protester must identify 'hard facts'; a mere inference or suspicion . . . is not enough." <u>PAI Corp. v. United States</u>, 614 F.3d at 1352 (citing <u>John C. Grimberg Co. v. United States</u>, 185 F.3d 1297, 1300 (Fed. Cir. 1999)); <u>see</u> <u>also</u> <u>Turner Constr. Co., Inc. v. United States</u>, 645 F.3d at 1387; <u>Sierra Nevada Corp. v. United States</u>, 107 Fed. Cl. 735, 759 (2012); <u>Filtration Dev. Co., LLC v. United States</u>, 60 Fed. Cl. 371, 380 (2004).

> A bid protest proceeds in two steps. First . . . the trial court determines whether the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract. Second . . . if the trial court finds that the government's conduct fails the APA review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct.

<u>Bannum, Inc. v. United States</u>, 404 F.3d at 1351; <u>T Square Logistics Servs. Corp. v. United States</u>, 134 Fed. Cl. 550, 555 (2017); <u>FirstLine Transp. Sec., Inc. v. United States</u>, 119 Fed. Cl. 116, 126 (2014), <u>appeal</u> <u>dismissed</u> (Fed. Cir. 2015); <u>Eco Tour Adventures, Inc. v. United States</u>, 114 Fed. Cl. at 22; <u>Archura LLC v. United States</u>, 112 Fed. Cl. at 496. To prevail in a bid protest case, the protestor not only must show that the government's actions were arbitrary, capricious, or otherwise not in accordance with the law, but the protestor also must show that it was prejudiced by the government's actions. <u>See</u> 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error."); <u>see</u> <u>also</u> <u>Glenn Def. Marine (ASIA), PTE Ltd. v. United States</u>, 720 F.3d at 907 ("In a bid protest case, the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial."); <u>IT Enter. Sols. JV, LLC v. United States</u>, 132 Fed. Cl. 158, 173 (2017) (citing <u>Bannum v. United States</u>, 404 F.3d at 1357-58).

As explained by the United States Court of Federal Claims in <u>Digitalis Education Solutions, Inc. v. United States</u>:

> Only an "interested party" has standing to challenge a contract award. <u>Rex Serv. Corp. v. United States</u>, 448 F.3d 1305, 1307 (Fed. Cir. 2006). An

interested party is an actual or prospective bidder whose direct economic interest would be affected by the award of the contract. Id. Thus, a party must show that it is 1) an actual or prospective bidder and 2) that it has a direct economic interest. "[I]n order to be eligible to protest, one who has not actually submitted an offer must be expecting to submit an offer prior to the closing date of the solicitation." MCI Telecomms. Corp. v. United States, 878 F.2d 362, 365 (Fed. Cir. 1989). To prove a direct economic interest, a party must show that it had a "substantial chance" of winning the contract. Rex Serv., 448 F.3d at 1308.

Digitalis Educ. Solutions, Inc. v. United States, 664 F.3d 1380, 1384 (Fed. Cir. 2012); see also Am. Fed'n of Gov't Emps. v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001), cert. denied, 534 U.S. 113 (2002); Centech Grp., Inc. v. United States, 78 Fed. Cl. 496, 503-504 (2007).

In the context of a pre-award bid protest which challenges the terms of the solicitation, the United States Court of Appeals for the Federal Circuit has determined that to show the requisite "direct economic interest," and, therefore, to be an "interested party" under the Tucker Act, the protestor has to have suffered a "'non-trivial competitive injury which can be redressed by judicial relief.'" See Orion Tech., Inc. v. United States, 704 F.3d 1344, 1348 (Fed. Cir. 2013) (quoting Weeks Marine, Inc. v. United States, 575 F.3d at 1362–63); see also CGI Fed. Inc. v. United States, 779 F.3d 1346, 1348 (Fed. Cir. 2018); COMINT Sys. Corp. v. United States, 700 F.3d at 1383 n.7 ("[I]n Weeks Marine this court specifically held that the 'non-trivial competitive injury' standard was applicable to 'a pre-award protest.'" (quoting Weeks Marine, Inc. v. United States, 575 F.3d at 1362)) (emphasis in original); MVS USA, Inc. v. United States, 111 Fed. Cl. 639, 647 (2013). This is a lower standard than the "substantial chance" standard used in post-award bid protests, but still requires a "showing of some prejudice." Orion Tech., Inc. v. United States, 704 F.3d at 1348-49 (quoting Weeks Marine, Inc. v. United States, 575 F.3d at 1362) (emphasis in original).

In addition to the court's jurisdiction over bid protests described above, the United States Court of Appeals for the Federal Circuit has established that this court has jurisdiction over a bid protest based on an agency's decision to take corrective action. See Sys. Application & Tech., Inc. v. United States, 691 F.3d at 1381 ("This court has made clear that bid protest jurisdiction arises when an agency decides to take corrective action even when such action is not fully implemented."); see also Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 937–38 (Fed. Cir. 2007); Jacobs Tech. Inc. v. United States, 131 Fed. Cl. 430, 444 (2017) ("[T]he court's bid protest jurisdiction includes the review of a procuring agency's decision to take corrective action."). The parties do not dispute, and the court independently concludes, that protestors' challenges in the above captioned bid protests to the Navy's limited corrective action decision is subject to this court's bid protest jurisdiction, and as [redacted], PAE and JIRS are both interested parties in the above captioned protests.

Additionally, as explained by a Judge of the United States Court of Federal Claims, the court's

> inquiry is unchanged in the corrective action context. See Dell Fed. Sys., L.P. v. United States, 906 F.3d 982, 992 (Fed. Cir. 2018). This means that a corrective action will not be set aside if there is a rational basis for it, supported by a "coherent and reasonable explanation." Id. The agency need not admit an error before taking corrective action, ManTech Telecomms. & Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 65 (2001), and the corrective action need only be "reasonable under the circumstances." Sierra Nevada Corp. v. United States, 107 Fed. Cl. 735, 750 (2012).

Superior Optical Labs, Inc. v. United States, 152 Fed. Cl. 319, 322–23 (2021).


Regarding the standard for review for proposed corrective action, the United States Court of Appeals for the Federal Circuit in a 2018 decision explained that the Federal Circuit has

> consistently reviewed agencies' corrective actions under the APA's "highly deferential" "rational basis" standard. Croman, 724 F.3d at 1363 (internal quotation marks and citation omitted); see id. at 1367 (affirming the Court of Federal Claims' grant of summary judgment in favor of the Government where the agency's corrective action "decisions were rationally based and not contrary to law"); see, e.g., Raytheon Co. v. United States, 809 F.3d 590, 595 (Fed. Cir. 2015) (explaining that, "for us to uphold the [agency's] decision to reopen the bidding process, it is sufficient . . . that the grounds relied on by the [agency] . . . rationally justified the reopening under governing law" (emphasis added)); Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 938 (Fed. Cir. 2007) (affirming Court of Federal Claims' inquiry, which considered the "reasonableness of the Government's . . . proposed corrective action"). The rational basis test asks "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (internal quotation marks and citation omitted); see id. at 1355–56 (upholding a "best value" award decision and finding a procurement official acted "within the scope of [his] discretion" in making "a reasonable judgment" to weigh equally a solicitation's "price and technical factors" despite "the solicitation's silence regarding the relationship between the [two]" because "the additional cost of [an unsuccessful bidder's] proposal would not offset its strong technical evaluation").

Dell Fed. Sys., L.P. v. United States, 906 F.3d at 992 (emphasis and alterations in original). Explaining the Federal Circuit's holding in Dell Federal Systems, a Judge of the United States Court of Federal Claims stated:

In <u>Dell Federal</u>, the United States Court of Appeals for the Federal Circuit reviewed a decision from this court that permanently enjoined the United States Army from proceeding with corrective action on a procurement for computer hardware. <u>See</u> <u>Dell Fed.</u>, 906 F.3d at 986. This court had "agreed that the Army had rationally identified procurement defects," but found that the "'Army's contemplated corrective action was overbroad'" and its "corrective action 'must narrowly target the defects it is intended to remedy.'" <u>Id.</u> at 989 (quoting the trial court's decision, <u>Dell Fed. Sys., L.P. v. United States</u>, 133 Fed. Cl. 92, 104 (2017)).

The Federal Circuit reversed this court's decision, holding that "[t]he Court of Federal Claims based its decision on an error of law because corrective action only requires a rational basis for its implementation." <u>Id.</u> at 991. The appeals court explained that "[t]he rational basis test asks 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" <u>Id.</u> at 992 (quoting <u>Banknote Corp. of Am., Inc. v. United States</u>, 365 F.3d 1345, 1351 (Fed. Cir. 2004)). Rather than applying this rational basis test, this court had applied a "heightened 'narrowly targeted' standard," which the Federal Circuit concluded was "an overly stringent test for corrective action." <u>Id.</u> at 992-93 (citing <u>Ala. Aircraft Indus., Inc.-Birmingham v. United States</u>, 586 F.3d 1372, 1376 (Fed. Cir. 2009)).

The Federal Circuit also rejected appellees' argument that courts "should view the 'narrowly targeted' requirement not as a heightened standard but rather as an application of the rational basis standard." <u>Id.</u> at 993. According to the appeals court, requiring a narrowly targeted solution to address a procurement defect "would undermine our deferential APA review, which statutorily mandates that we determine 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" <u>Id.</u> at 994 (quoting <u>Banknote</u>, 365 F.3d at 1351).

<u>Clarke Health Care Prod., Inc. v. United States</u>, 149 Fed. Cl. 440, 445–46 (2020); <u>see also</u> <u>Superior Optical Labs, Inc. v. United States</u>, 152 Fed. Cl. at 323 ("[A] corrective action will not be set aside if there is a rational basis for it, supported by a 'coherent and reasonable explanation." (quoting <u>Dell Fed. Sys., L.P. v. United States</u>, 906 F.3d at 992)).

"A contracting agency has broad discretion whether to pursue corrective action during the course of a procurement."[5] <u>Wildflower Int'l, Ltd. v. United States</u>, 105 Fed. Cl. 362, 385-86 (2012); <u>see</u> <u>also</u> <u>Sys. Application & Techs., Inc. v. United States</u>, 100 Fed.

---

[5] Quoting the appellant's brief, the United States Court of Appeals for the Federal Circuit in <u>Dellew Corp.</u> noted that "'corrective action' in the bid protest context generally means 'agency action, usually taken after a protest has been initiated, to correct a perceived prior error in the procurement process, or, in the absence of error, to act to improve the competitive process.'" <u>Dellew Corp. v. United States</u>, 855 F.3d 1375, 1378 n.2 (Fed. Cir. 2017).

Cl. at 716 ("As with all procurement decisions, an agency has broad discretion to take necessary corrective action. Accordingly, the court affords the Army's decision to take corrective action deference and will uphold the decision if it is rational, reasonable, and coherent and reflects due consideration of all relevant facts." (internal citations omitted)); Jacobs Tech. Inc. v. United States, 100 Fed. Cl. 186, 190 (2011) ("Contracting officers are entitled to broad discretion in the procurement process . . . including in their decisions to take corrective action."); ManTech Telecomm. & Info. Sys. Corp. v. United States, 49 Fed. Cl. at 65 ("Regarding the use of corrective action, this court has held that '[c]ontracting officials in negotiated procurements have broad discretion to take corrective action where the agency determines that such action is necessary to ensure fair and impartial competition.'") (internal citations omitted). To be reasonable, "the agency must have 'examined the relevant data and articulated a coherent and reasonable explanation for [its] decision'" to take corrective action. See Jacobs Tech. Inc. v. United States, 131 Fed. Cl. at 450 (quoting WHR Grp., Inc. v. United States, 115 Fed. Cl. 386, 396 (2014)) (modification in original). In assessing whether to take corrective action, "[t]he contracting agency does not have to 'admit an error' prior to its decision to pursue corrective action." Wildflower Int'l, Ltd. v. United States, 105 Fed. Cl. at 386; see also ManTech Telecomms. & Info. Sys. Corp. v. United States, 49 Fed. Cl. at 72 ("[I]t is important to recall that the government is not obliged to admit an error as a precondition to proposing corrective action."); Ceres Gulf, Inc. v. United States, 94 Fed. Cl. 303, 318 (2010) ("The contracting officer need not identify a particular error in the procurement process as a precondition to proposing corrective action." (internal citations and quotations removed)).

To determine whether the scope of a corrective action was reasonable under the circumstances and appropriate to remedy the impropriety, the court must conduct a fact-specific review. See Prof'l Serv. Indus., Inc. v. United States, 129 Fed. Cl. 190, 203 (2016) ("Given the broad discretion afforded agencies in the bid protest arena, the great weight of authority is that to survive review, an agency's corrective action must be 'reasonable under the circumstances and appropriate to remedy the impropriety.' Amazon Web Servs., Inc., v. United States, 113 Fed. Cl. 102, 115 (2013) (quoting Reema Consulting Servs., Inc. v. United States, 107 Fed. Cl. 519, 527 (2012))."); see also Jacobs Tech. Inc. v. United States, 131 Fed. Cl. at 443-44; Wildflower Int'l, Ltd. v. United States, 105 Fed. Cl. at 389. In WHR Group, Inc. v. United States, a Judge of the United States Court of Federal Claims held "there can be no universal test as to what constitutes appropriate corrective action," and embraced the "reasonable under the circumstances" test. WHR Grp., Inc. v. United States, 115 Fed. Cl. at 397; see also Prof'l Serv. Indus., Inc. v. United States, 129 Fed. Cl. at 203 (considering whether the agency's corrective action was "reasonable under the circumstances and whether it [was] supported by the administrative record"). In Wildflower International, Ltd. v. United States, the court held that "[c]orrective action is reasonable when it is 'rationally related to the defect to be corrected." Wildflower Int'l, Ltd. v. United States, 105 Fed. Cl. at 389; see also Superior Optical Labs, Inc. v. United States, 152 Fed. Cl. at 323 ("[T]he corrective action need only be "reasonable under the circumstances." Id. (quoting Sierra Nevada Corp. v. United States, 107 Fed. Cl. at 750); PGLS LLC v. United States, 152 Fed. Cl. 59, 69 (2020); Manus Medical, LLC v. United States, 115 Fed. Cl. 187, 192 (2014) ("[C]orrective action must still be 'reasonable under the circumstances and appropriate to remedy the

impropriety.'" (quoting <u>Reema Consulting Servs., Inc. v. United States</u>, 107 Fed. Cl. at 527)).

Although the Navy "has broad discretion whether to pursue corrective action during the course of a procurement," <u>Wildflower Int'l, Ltd. v. United States</u>, 105 Fed. Cl. at 385-86, the court still must conduct a fact-specific inquiry in the above captioned bid protests to determine if the Navy has "provided a coherent and reasonable explanation of its exercise of discretion." <u>Dell Fed. Sys., L.P. v. United States</u>, 906 F.3d at 994. On November 2, 2020, the government filed a notice in Case No. 20-1324C and Case No. 20-1325C, which stated, in part:

> The United States, respectfully provides notice that the United States Department of the Navy (Navy) intends to take corrective action in this case, starting on November 20, 2020, at which time the Navy intends to issue new discussion letters to all three offerors in the competitive range for the purpose of requesting new cost proposals. The Navy's cost analysts will evaluate the new cost proposals. Following that cost evaluation, the Source Selection Advisory Council (SSAC) will issue a new recommendation, and the contracting officer will conduct a new best-value determination, in accordance with the solicitation's requirements, to make a new source-selection decision based upon the results of that determination.

(capitalization in original). Consistent with the representations made by the defendant at a November 2, 2020 hearing and in the defendant's notice in Case No. 20-1324C and Case No. 20-1325C that the defendant wished to undertake corrective action, the Navy issued a December 7, 2020 corrective action discussion letter to the each of the three offerors in the competitive range, which stated, in part:

> The purpose of this letter is to notify you that due to the receipt of protests to the award of contract N66604-20-C-0881, the Navy is taking Corrective Action. Final Proposal Revisions (FPRs) are being requested by Offerors remaining in the Competitive Range. The FPR requested is for a "Cost" proposal only. Enclosure (1) contains the Discussion Topics to which Offerors shall respond in their Final Proposal Revisions. Offerors are not being afforded the opportunity to revise any portion of its Technical proposal or technical approach. The Offeror's Technical Proposal and approach, as submitted on 22 January 2020, will form the basis of the Government's final source selection.

In a December 28, 2020 memorandum of record written by the contracting officer, the contracting officer noted:

> After evaluating the protest grounds set forth in plaintiffs' respective Motions for Judgement on the Record, the Government determined taking corrective action was appropriate and necessary with respect to the Navy's evaluation of Other Direct Costs (ODCs). The Government, represented by the

Department of Justice, discussed its proposed corrective action with the Court and plaintiffs' counsel during a telephonic hearing on 02 November. In light of the Navy's proposed corrective action, the Court issued an order the same day dismissing both complaints. PAE and JIRS have now filed complaints with COFC challenging the scope of the Navy's corrective action.

(capitalization in original). The contracting officer's December 28, 2020 memorandum of record explained: "Ultimately, based on all information and with a goal of maximizing fairness and resolving the Government's evaluation error, the Contracting Officer continues to consider the most appropriate scope of corrective action allowing for revisions and revaluation of cost proposals only." The contracting officer's December 28, 2020 memorandum of record continued:

> After review of the protest grounds, the Contracting Officer, NUWC Legal Counsel, and the Department of Justice (DOJ) counsel agreed that, with the exception of the ODC issue related to cost, all of the other aspects of the evaluation questioned by the protestors (i.e. all grounds associated with the technical factor) were rational and defensible. Furthermore, the Contracting Officer considered that, as detailed above, prior discussions had taken place and all offerors in the competitive range had two rounds of exchanges where their technical issues identified by the government were provided in accordance with FAR 15.306(d); therefore, a fair opportunity was afforded all offerors to improve their technical proposals. This is supported by the fact all offerors in the competitive range are at least technically acceptable and awardable under the solicitation. Although further discussions are necessary because of an error in the Government's evaluation that impacted the cost of all offerors, as detailed below, limiting the scope of discussions to cost proposals is fairest approach without undermining competition. Therefore, it remains both fair to all offerors and reasonable for the Government to conduct no further discussions related to technical proposals.

(capitalization in original). The contracting officer's December 28, 2020 memorandum of record further indicated:

> In addition, the Contracting Officer considered the potential impact on schedule. Given the complexity of this requirement, and based on the historical timelines, it could take upwards of 2-3 additional months to complete a full re-evaluation of technical proposals. Considering that the Navy already has three viable and awardable proposals, the schedule and effort associated with revising and reevaluating technical proposals outweighs any potential nominal improvement to offerors' technical proposals.

The contracting officer's December 28, 2020 memorandum of record also indicated:

> Although the goal of this corrective action was to allow offerors to provide cost proposal revisions to allow the Government to correct an error in its cost evaluation, the Contracting Officer also considered to what degree an offeror's standing could be impacted in terms of the best value tradeoff. Noting that the solicitation considers both non-cost/price and cost/price factors, allowing for offerors to only change their cost proposals could potentially impact the degree to which offerors can improve their standing. The Contracting Officer also considered the fairness of the contemplated corrective action and determined it was fair for all offerors because the technical proposals are equally fixed. Any technical advantage in the tradeoff was earned by the offeror(s) in their prior proposal, and thus, is not an undue or unfair advantage. To date and through discussions, all offerors were afforded the same full and equitable opportunity to improve proposals. Therefore, not permitting further revisions to technical proposals remains fair to all offerors.

(capitalization in original). The contracting officer's December 28, 2020 memorandum of record concluded:

> Based on the above, and with full consideration of the protestors' allegations and the content of the status conference held on 23 December 2020, the Contracting Officer determined that entering into discussions with cost only proposal revisions continues to be a reasonable approach that is fair to all parties and will resolve the errors present in the Government's evaluation.

Defendant argues:

> The contracting officer's decision satisfies rational basis review. He first identified the ODC [Other Direct Costs] issue as a "defect" that requires correction. He then fashioned a corrective action that is "rationally related" to that defect: because the ODC issue only affects offerors' cost proposals, those are the only proposals that offerors were permitted to revise. And finally, he offered a "coherent and reasonable explanation" for the corrective action's limited scope.

Intervenor argues that "[t]he Navy has done just what it said it would. First, it conducted a new evaluation of all three offerors' FPRs [Final Proposal Revisions]. That evaluation confirmed that *all three offerors* had [redacted]."(capitalization and emphasis in original). Intervenor also contends, "*all three offerors* [redacted]. The evaluations also identified several other cost issues in each offeror's proposal."(capitalization and emphasis in original; internal citations omitted). Intervenor argues that "the Navy determined that its original award decision was marred by an error in its evaluation of

ODCs. Because that error was confined to the Cost evaluation, and the agency identified no problem with the Technical evaluation, it reopened discussions limited to Cost issues and accepted revised Cost proposals only. That decision was rational." (capitalization in original).

Additionally, defendant argues "PAE and JIRS do not dispute that the Navy's evaluation of ODCs was a genuine defect in the AUTEC procurement. Nor do they dispute that the submission of new cost proposals rationally relates to that defect." Defendant contends that, therefore, the court should find that "[t]he Navy's corrective action rationally relates to a defect in the AUTEC procurement." (capitalization in original; internal citations omitted).

It is correct that neither PAE and JIRS claim that there were no issues with the previous cost proposals. Rather, PAE and JIRS offer a number of reasons why they each believe that the limited corrective action the Navy undertook was flawed. Initially, PAE and JIRS argue the court should disregard the contracting officer's December 28, 2020 memorandum of record because it is an improper "post-hoc" document. JIRS argues that the contracting officer's December 28, 2020 memorandum of record should be disregarded "because it provides an improper *post hoc* rationale for the Navy's corrective action decision," and PAE argues that the "Navy's *post hoc* memo lacks a rational basis." (emphasis in original). JIRS points to the timeline of the procurement, noting that it was November 2, 2020 that the Navy filed its notice of corrective action and it was November 9, 2020 and December 1, 2020, when the Navy completed a cost evaluation of JIRS's cost Final Proposal Revision and a revised cost evaluation of Amentum's and PAE's Final Proposal Revision. As indicated above, the Navy issued the corrective action discussion letters to the three offerors on December 7, 2020, PAE filed its current, pre-award bid protest on December 21, 2020, and JIRS filed its current, pre-award bid protest on December 22, 2020. JIRS notes that the contracting officer's memorandum of record was dated December 28, 2020, and included a reference to "the content of the status conference held on 23 December 2020." Therefore, JIRS argues "[t]his memorandum provides a *post hoc* rationale for the Navy's decision making process that was prepared in the heat of litigation, and the Navy cannot rely on it to demonstrate that its decision to limit corrective action was reasonable."

JIRS cites to <u>Raytheon Co. v. United States</u>, in which the court commented that the January 26, 2015 memorandum concerning the Air Force's decision to take corrective action was not created "at the time the procuring agency made its decision," and the court struck the memorandum from the administrative record in the <u>Raytheon</u> case. <u>See</u> <u>Raytheon Co. v. United States</u> 121 Fed. Cl. 135, 158, 160, <u>aff'd</u>, 809 F.3d 590 (Fed. Cir. 2015). The court notes that the situation in <u>Raytheon</u> was different from the issues currently before this court. The Judge in <u>Raytheon</u> explained,

> by definition, a post-hoc rationale is any rationale that departs from the rationale provided at the time the procuring agency made its decision. <u>See</u> <u>CRAssociates</u>, 95 Fed. Cl. at 377 (remarking that a post-hoc rationale can take the form of a new explanation for a decision or a previously undocumented rationale); <u>see</u> <u>also</u> <u>id.</u> at 376 n. 15 (distinguishing between

post-hoc rationalizations and "further explanations"); <u>D & S Consultants, Inc. v. United States</u>, 101 Fed. Cl. 23, 35–36 (2011) (same). When the Air Force, in its January 16, 2015 letter, notified the GAO and the contractors that it intended to take corrective action, it provided: "In response to the Outcome Prediction session, and in accordance with guidance from your office, the Air Force has decided to take corrective action." In contrast, the Air Force provided the following justifications for taking corrective action in its January 26, 2015 memorandum: (1) it "concede[d] that its documentation included references to the [TRLRU (Transmit/Receive Line Replaceable Unit)], which could create ambiguity as to the TRL assessment team's conclusions"; (2) it "concede[d] that after receiving Raytheon's response to the subject EN [Evaluation Notice], it did not reply to Northrop Grumman reiterating the present legal treatment of IR & D" [independent research and development]; (3) it wanted "to ensure [that] all offerors [had] a complete understanding of [its] actions"; and (4) it wanted "to provide more robust documentation supporting [its] decision" to award the contract to Raytheon. The justifications contained in the memorandum go beyond the rationale that the Air Force described in its earlier letter. The most reasonable reading of the Air Force's January 16, 2015 letter is that the Air Force recognized that the GAO would sustain the protests lodged by Northrop and Lockheed and that, to avoid that result, it decided to take corrective action to address the GAO's concerns (regardless of whether it agreed with the GAO that the relevant protest grounds were valid). However, in its January 26, 2015 memorandum, the Air Force expressly conceded the validity of the relevant protest grounds, posited that the contractors did not completely understand its actions, and asserted that the documentation of its award decision was not sufficiently robust. None of these reasons was contained in its original letter. Even if they were not new rationales from the Air Force's point of view, they certainly constituted previously undocumented rationales.

<u>Raytheon Co. v. United States</u>, 121 Fed. Cl. at 158–59 (capitalization in original) (footnotes and internal citations omitted).[6]

---

[6] The court notes that the Judge in <u>Raytheon</u> also addressed the delay between the decision to take corrective action on January 16, 2015 and issuing the January 26, 2015 memorandum concerning the Air Force's decision to take corrective action: "The Air Force did not issue its memorandum justifying its decision to take corrective action until ten days after it indicated its intent to take corrective action and three days after it learned that Raytheon would be protesting its proposed corrective action." <u>Raytheon Co. v. United States</u>, 121 Fed. Cl. at 157. The Judge noted, however,

> [t]he mere ten-day delay between the decision to take corrective action and the memorandum containing the justification for the decision does not render the memorandum untimely or otherwise improper. In fact, there is no legal requirement that such a memorandum be completed prior to a procuring agency announcing its decision. Further, the information in the memorandum is consistent with the remainder of the administrative record.

Unlike in Raytheon, the Navy's explanation in the November 2, 2020 notice of corrective action, the statements at the November 2, 2020 hearing, the December 7, 2020 corrective action letters, and the December 28, 2020 memorandum have been consistent. In each instance, the Navy has stressed that the corrective action would be for the cost proposals and the cost proposals only. For example, the November 2, 2020 notice to the court stated, in part, the Navy "intends to take corrective action in this case, starting on November 20, 2020, at which time the Navy intends to issue new discussion letters to all three offerors in the competitive range for the purpose of requesting new cost proposals," and the December 7, 2020 letter stated: "Final Proposal Revisions (FPRs) are being requested by Offerors remaining in the Competitive Range. The FPR requested is for a 'Cost' proposal only. Enclosure (1) contains the Discussion Topics to which Offerors shall respond in their Final Proposal Revisions. Offerors are not being afforded the opportunity to revise any portion of its Technical proposal or technical approach." (capitalization in original). Even JIRS, while criticizing the supposed lack of information the Navy provided at the November 2, 2020 hearing, still noted: "The Navy made a brief statement that it was limiting corrective action to soliciting revised cost proposals because the only error the Navy identified with the procurement concerned assumptions related to other direct costs (ODC)."

Additionally, the court notes that previously the Navy had identified issues with all the offerors' technical proposals and cost proposals on multiple occasions. For example, in each of the Navy's July 31, 2019 discussion letters, the letter explained "[t]he Government identified Technical, Cost/Price and/or Contractual issues within your proposal, as detailed below." The Navy's July 31, 2019 discussion letter to PAE identified [redacted] topics for Technical discussions, [redacted] topics for Cost/Price discussions, and [redacted] topics for contractual discussions. The Navy's July 31, 2019 discussion letter to JIRS identified [redacted] topics for Technical discussions, [redacted] topics for Cost/Price discussions, and [redacted] topics for contractual discussions, and the Navy's July 31, 2019 discussion letter to Amentum identified [redacted] topics for Technical discussions, [redacted] topics for Cost/Price discussions, and [redacted] topics for contractual discussions. For all three letters, the Navy noted: "This is not a request for Final Proposal Revision. Final Proposal Revisions will be requested after the close of discussions. This letter shall not be construed as a contract, a promise to contract, or a commitment of any kind."

Moreover, because the Air Force did not prepare the memorandum while this litigation was pending, it could not have used the memorandum to invent a justification for its decision to take corrective action for the purposes of litigation. In sum, there is no reason to suspect that the memorandum does not accurately reflect the rationale for the Air Force's decision. Nevertheless, any concerns regarding the memorandum should be addressed by giving it the necessary weight, rather than by striking it from the administrative record.

Id. at 157–58.

The contracting officer's December 28, 2020 memorandum of record is more akin to the situation in <u>D & S Consultants, Inc. v. United States</u>, rather than in <u>Raytheon</u>, as the Judge in <u>D & S Consultants</u> explained:

> Here, the documents containing the agency's explanations to GAO regarding the IGCE [Independent Government Cost Estimate] —particularly that DVA [Department of Veterans Affairs] used rates from contractors selected from a pool of 407 contractors who had expressed interest in the Solicitation—do not constitute post-hoc rationalizations. Rather, they constitute a further explanation of the process used by the agency. The Court may consider explanatory materials that do not offer new rationales for past decisions and that illuminate the methodology the agency employed in making its determination.

<u>D & S Consultants, Inc. v. United States</u>, 101 Fed. Cl. at 35 (capitalization in original; internal citations omitted). Although more fully developed than the statement in the November 2, 2020 notice or in the statements made by the government at the November 2, 2020 hearing, the contracting officer's December 28, 2020 memorandum of record is consistent with the agency's previous statements and positions.

Furthermore, PAE and JIRS both argue that the contracting officer's December 28, 2020 memorandum of record and the corrective action itself are flawed because the limited corrective action is "narrowly targeted." Citing to <u>Dell Federal</u>, PAE states:

> By limiting proposal revisions to cost issues only, the Navy narrowly targeted its corrective action. At one time, some trial courts applied a "narrowly targeted" standard in reviewing agency corrective actions. Since then, the Federal Circuit expressly rejected this standard, holding that agencies must apply a "rational basis" test, not a "narrowly targeted" justification. <u>Dell Fed. Sys., L.P.</u>, 906 F.3d at 991-92. Thus, the Navy's "narrowly targeted" corrective action applies the wrong legal standard.

JIRS similarly argues that "the Federal Circuit has expressly rejected the proposition that corrective action must be 'narrowly targeted' to the defects identified in a procurement." (citing <u>Dell Fed. Sys., L.P. v. United States</u>, 906 F.3d at 991-92). JIRS, states that "[t]he Navy argues that it only acknowledged one 'error' in the evaluation related to 'the ODC issue related to cost,' and that discussions are appropriately limited to this issue."

As quoted above, a Judge of the United States Court of Federal Claims explained the Federal Circuit's reasoning:

> Rather than applying this rational basis test, this court had applied a "heightened 'narrowly targeted' standard," which the Federal Circuit concluded was "an overly stringent test for corrective action." <u>Id.</u> at 992-93

(citing Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1376 (Fed. Cir. 2009)).

The Federal Circuit also rejected appellees' argument that courts "should view the 'narrowly targeted' requirement not as a heightened standard but rather as an application of the rational basis standard." Id. at 993. According to the appeals court, requiring a narrowly targeted solution to address a procurement defect "would undermine our deferential APA review, which statutorily mandates that we determine 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" Id. at 994 (quoting Banknote, 365 F.3d at 1351).

Clarke Health Care Prod., Inc. v. United States, 149 Fed. Cl. at 445–46. As the Clarke decision makes clear, this court agrees that the Federal Circuit rejected the "narrowly targeted" standard that the Court of Federal Claims had previously applied, in favor of a rational basis test. Unlike protestors' claims, however, under Dell Federal, the Navy was permitted to take limited corrective action, even one specifically aimed at cost, so long as the Navy had a rational basis for taking the corrective action.

PAE further argues that the "solicitation specified a best-value competition with the technical factor being most important and cost being least important. The Navy's corrective action departs from this stated evaluation scheme by barring technical competition during the third evaluation round and forcing offerors into a cost/price shoot-out on the least important evaluation factor." PAE further claims that "[b]y prohibiting new technical proposals, the Navy neutralized the technical factor as a basis for competition during the latest round of proposals and evaluations." (internal citation omitted). Thus, according to PAE, "the Navy's cost-only corrective action cannot be squared with evaluation criteria emphasizing technical competition as the top priority," and further argues that "[b]y limiting the latest proposals to cost only, the Navy inflated the importance of cost in the competition, contrary to the RFP's evaluation weighting." Intervenor responds that "[t]he factor weightings apply to the Navy's best value determination, not the conduct of discussions or acceptance of revised proposals. And when the agency makes its best value determination, it will give appropriate weight to the Technical and Cost factors. PAE identifies no basis for its speculation to the contrary." The government's statements to the court and in its correspondence with the offerors about the limited correction, including in the contracting officer's December 28, 2020 memorandum for record, do not establish that the agency will fail to evaluate the offerors' proposals in accordance with the solicitation. Nor do the government's statement demonstrate that by only permitting revisions to the cost proposals the importance of cost has been "inflated," especially given earlier discussions and revisions to the offerors' technical proposals. In fact, the contracting officer's December 28, 2020 memorandum of record explained:

> Although the goal of this corrective action was to allow offerors to provide cost proposal revisions to allow the Government to correct an error in its cost evaluation, the Contracting Officer also considered to what degree an offeror's standing could be impacted in terms of the best value tradeoff.

Noting that the solicitation considers both non-cost/price and cost/price factors, allowing for offerors to only change their cost proposals could potentially impact the degree to which offerors can improve their standing. The Contracting Officer also considered the fairness of the contemplated corrective action and determined it was fair for all offerors because the technical proposals are equally fixed. Any technical advantage in the tradeoff was earned by the offeror(s) in their prior proposal, and thus, is not an undue or unfair advantage. To date and through discussions, all offerors were afforded the same full and equitable opportunity to improve proposals. Therefore, not permitting further revisions to technical proposals remains fair to all offerors.

(capitalization in original). Therefore, the record indicates that the Navy had considered the impact of only allowing revisions to the cost proposals to the best value determination. It, therefore, cannot immediately be considered unfair at this pre-award stage and before the final evaluation to allow the three offerors provide revisions to the cost proposals only.

Moreover, the agency has repeatedly explained that the Navy is only seeking revisions to the cost proposals because the Navy believes that errors were made only in the evaluation of the cost proposals, and not as to the technical proposals. Furthermore, in the contracting officer's December 28, 2020 memorandum for record, the contracting officer explained that "prior discussions had taken place and all offerors in the competitive range had two rounds of exchanges where their technical issues identified by the government were provided in accordance with FAR 15.306(d)." The contracting officer's December 28, 2020 memorandum for record also concluded, "therefore, a fair opportunity was afforded all offerors to improve their technical proposals. This is supported by the fact all offerors in the competitive range are at least technically acceptable and awardable under the solicitation."

Regarding discussions, JIRS argues "[t]he Navy's corrective action amounts to unequal discussions because it focuses discussions and proposal revisions on every issue that the Navy has identified in Amentum's proposal that could conceivably enhance Amentum's chances for award without providing JIRS the same opportunity." For example, JIRS alleges that "Amentum can even resolve [redacted]." PAE argues that "the Navy's refusal to conduct discussions regarding technical updates disfavored PAE." As noted immediately above, however, the contracting officer's December 28, 2020 memorandum for record stated "prior discussions had taken place and all offerors in the competitive range had two rounds of exchanges where their technical issues identified by the government were provided in accordance with FAR 15.306(d)." The memorandum for record; therefore, concluded that "a fair opportunity was afforded all offerors to improve their technical proposals."

Defendant's motion for judgment on the Administrative Record agrees that "[i]t is true, of course, that the corrective action chosen by the Navy does not allow every offeror to address every weakness in their respective proposals." Defendant, however, points to FAR 15.306(d)(3), which states:

At a minimum, the contracting officer must, subject to paragraphs (d)(5) and (e) of this section and 15.307(a), indicate to, or discuss with, each offeror still being considered for award, deficiencies, significant weaknesses, and adverse past performance information to which the offeror has not yet had an opportunity to respond. The contracting officer also is encouraged to discuss other aspects of the offeror's proposal that could, in the opinion of the contracting officer, be altered or explained to enhance materially the proposal's potential for award. However, the contracting officer is not required to discuss every area where the proposal could be improved. The scope and extent of discussions are a matter of contracting officer judgment.

FAR 15.306(d)(3) (2020); see also PAE-Parsons Glob. Logistics Servs., LLC v. United States, 147 Fed. Cl. 294, 306-307 (2020).

PAE responds in the above captioned pre-award bid protests, "[d]iscussions must be meaningful. At a minimum, agencies must identify significant weaknesses and allow offers [sic] the opportunity to address them in revised proposals," and "[b]y prohibiting discussions and updated proposals on technical issues, the Navy's cost-only discussions fail to comply with FAR § 15.306(d)(3)." PAE takes issue with the Navy not holding additional discussions [redacted] that the Navy identified in PAE's most recent technical proposal. Intervenor argues that "[h]ere, the Navy is not conducting Technical discussions or accepting revised Technical proposals so the Navy is not required to give PAE a chance to address [redacted]." More significantly, however, is the fact that the Navy already had held discussions with PAE on the contractor housing issue. As indicated in the Navy's July 31, 2019 letter titled "OPEN DISCUSSIONS FOR SOLICITATION NUMBER N6660418R0881," the Navy indicated: [redacted]

PAE argues, [redacted] Consistent with the decision by a Judge of the United States Court of Federal Claims in Tele-Consultants, the Navy is not required to hold additional discussions for PAE new proposed plan. See Tele-Consultants, Inc. v. United States, 142 Fed. Cl. 686, 697 (2019). The Judge in Tele-Consultants held

the Army was under no obligation to hold follow-on discussions after TCI [Tele-Consultants Inc.] submitted its revised Phase 2 proposal. It is well established that "the decision whether to reopen discussions is largely a matter left to the agency's discretion." Lyon Shipyard, Inc. v. United States, 113 Fed. Cl. 347, 357 (2013). "[A]n agency is not required to reopen discussions to afford an offeror an additional opportunity to revise its proposal where a weakness or deficiency is first introduced in the firm's revised proposal." Ellwood Nat'l Forge Co., B-416582, 2018 CPD ¶ 362 (Comp. Gen. Oct. 22, 2018); see also Iron Bow Techs., LLC v. United States, 133 Fed. Cl. 764, 780 (2017). Indeed, the contracting officer cautioned that "[r]evised proposals will be evaluated in accordance with the terms and conditions of the solicitation, including all amendments" and that the Army intended "to make award without discussions after receipt of

revised proposals, and d[id] not intend to obtain further revisions." Thus, there is no merit to TCI's contention that the Army was required to reopen discussions after TCI's revised proposal introduced a new issue of noncompliance with the Solicitation's requirements.

Tele-Consultants, Inc. v. United States, 142 Fed. Cl. at 697 (internal citation omitted). In the above captioned bid protests, the Navy made it clear there will be no further revisions or discussions of the technical proposals. The Navy's December 7, 2020 corrective action discussion letter to the three offerors stated: "Offerors are not being afforded the opportunity to revise any portion of its Technical proposal or technical approach. The Offeror's Technical Proposal and approach, as submitted on 22 January 2020, will form the basis of the Government's final source selection. The technical FPR [Final Proposal Revision] shall not be revised, nor resubmitted. The Government will not open or evaulate [sic] any revised technical FPRs." (capitalization in original). Given the facts regarding these pre-award bid protests currently under review, including the earlier opportunities to address the identified defects in the offerors' technical proposals, it was not improper for the Navy not to conduct technical discussions again.

Further, both protestors argue that the Navy violated FAR 15.306(e). FAR 15.306(e) provides, in part, "[g]overnment personnel involved in the acquisition shall not engage in conduct that—(1) Favors one offeror over another." FAR 15.306(e)(1); see also DMS All-Star Joint Venture v. United States, 90 Fed. Cl. 653, 672 (2010). As noted above, JIRS argues "[t]he Navy's corrective action amounts to unequal discussions because it focuses discussions and proposal revisions on every issue that the Navy has identified in Amentum's proposal that could conceivably enhance Amentum's chances for award without providing JIRS the same opportunity." PAE argues that "discussions must not favor one offeror at the expense of others," but "the Navy's cost-only discussions favored Amentum and disfavored PAE. Amentum uniquely benefitted from the cost-only discussions for ODC and rates."

Defendant and intervenor correctly note that "[t]he Navy's corrective action does not address Amentum's [redacted]," and "Amentum will not be able to resolve this technical weakness through its new cost proposal." Despite JIRS' argument that "Amentum can even resolve [redacted]," intervenor notes that the discussion letter that Amentum received "expressly advised Amentum that it could not make any changes to its Technical proposal or approach. Consistent with the restriction, the discussions letter did not mention the [redacted]. Amentum is being treated just like JIRS: Neither will have the opportunity to revise their Technical proposals." Moreover, intervenor states that no offeror is being permitted to revise its technical proposal "because the error that led to corrective action was confined to the Cost evaluation, and the agency has identified no problem with the Technical evaluation. Thus, PAE is not being treated differently or less favorably than Amentum. The Navy's corrective action treats all three offerors fairly and equally."[7] Moreover, as explained by the government, all offerors have an opportunity to

---

[7] Intervenor goes so far as to argue that

revise their cost proposals. The government argues that "the Navy selected a corrective action that rationally relates to a defect in the procurement, and one that equally permits all three offerors to submit new cost proposals for consideration under the same evaluation standards." Therefore, the government contends, "[e]ven if PAE and JIRS can point to some technical weaknesses they did not get to address and some cost issues Amentum did get to address, this is immaterial to the Court's analysis under the rational basis test."

Finally, PAE argues "the Navy previously conducted two rounds of cost discussions – and now proceeds with a third round during corrective action. Having allowed three rounds of cost discussions, the Navy had no rational basis for refusing to do the same for technical discussions." As noted above, however, if the Navy does not believe there are any outstanding issues with the evaluation of the technical proposals, and only with the cost proposals, it can proceed only with respect to cost. The Navy only seeks a third round of discussions to the cost proposals to resolve the errors the Navy believes still exist with the cost proposals. The contracting officer's December 28, 2020 memorandum for record noted that "all offerors in the competitive range are at least technically acceptable and awardable under the solicitation." Therefore, the Navy had a rational basis to include a third round of discussions for cost, but not technical, and the Navy's corrective action did not violate FAR 15.306(d) or FAR 15.306(e) when limiting the revised proposals and discussions to issues of cost.

Moreover, as explained by the Judge of the United States Court of Federal Claims in Conley & Associates:

> An agency only needs a "coherent and reasonable explanation" for its proposed corrective action. Dell Fed. Sys., 906 F.3d at 992. . . . If an agency chooses to accept further revisions after offerors submit FPRs, it must accept revisions from all offerors because it must treat all offerors fairly. See id. [Chenega Healthcare Servs., LLC v. United States, 138 Fed. Cl. 644,] at 651-52 [(2018)].

> The Army's decision to reevaluate proposals without holding discussions was within its discretion. The Army provided rational reasons for not wanting to reopen discussions and accept revised proposals, including finality and speedy resolution of the procurement process. The proposed corrective action does not discriminate against Conley because it will consist of

---

to the extent that any offeror could be said to benefit from this corrective action, it is PAE and JIRS — not Amentum. As a result of the initial debriefing, they know what Amentum bid, and even know how their original Technical and Past Performance ratings stacked up against Amentum's original Technical and Past Performance ratings. But Amentum does not know PAE's or JIRS's prices or their Technical or Past Performance ratings.

(capitalization in original; internal citations omitted).

reevaluating all offerors' FPRs' Technical Factor, including the Key Personnel subfactor, according to the same evaluation standards.

Conley & Assocs., Inc. v. United States, 142 Fed. Cl. 177, 184 (2019) (capitalization in original; internal citations omitted). It was within the Navy's purview to limit the corrective action only to cost proposals, and the limited corrective action on its face did not discriminate against PAE and JIRS, as all offerors were given a chance to revise their cost proposals. Moreover, consistent with the FAR, the Navy intends to perform a new cost realism analysis with the revised cost proposals, and then "the source selection advisory counsel, the SSAC, will review those new cost proposals and prepare a recommendation for the source selection authority and then the source selection authority will be prepared to issue a new award decision."

Defendant argues that "[a]t bottom, PAE and JIRS urge the Court to enjoin the Navy's limited corrective action because they believe that a broader corrective action – one that permits them to submit new technical proposals as well – is better suited to the circumstances of this case." As defendant correctly notes, the Federal Circuit in Dell Federal Systems addressed a very similar argument. The Federal Circuit stated:

> Finally, Appellees argue that the Army's failure to consider other "[m]ore [l]imited" corrective actions is arbitrary and capricious. The Army was not legally required to address every option, but rather to provide a reasonable corrective action and adequately explain its reasoning for doing so. See Chapman, 490 F.3d at 938. The Army rationally decided to ameliorate a defective solicitation by re-opening the procurement, following the applicable regulation, and engaging in discussions to award new contracts. Even if we agreed with Appellees that the Army had other, better options available, we nevertheless conclude that the option it chose was reasonable, and we therefore refuse to "substitute [our] judgment" for that of the Army by determining whether there was another, perhaps preferable solution. See R & W Flammann GmbH v. United States, 339 F.3d 1320, 1322 (Fed. Cir. 2003) ("[W]hen an officer[']s decision is reasonable a court may not substitute its judgment for that of the agency.").

Dell Fed. Sys., L.P. v. United States, 906 F.3d at 998–99 (internal citation omitted).

It appears that PAE and JIRS both seek a fuller and more complete corrective action to submit revised technical proposals in addition to the cost proposals. Although as indicated below, the court may believe there may have been advantages to the Navy to consider a fuller corrective action, the court does not accept the protestors' arguments that the Navy was required to so in this pre-award context during the second round of protests. The Navy identified an issue with its evaluations of the Other Direct Costs, believing it to be a defect in the procurement process, and after review of the offerors' proposals, determined that the offerors all included costs as part of their Other Direct Costs that could not be accounted for as the offers stood. The Navy, therefore, decided to take limited corrective action, especially after already having provided the offerors two,

previous opportunities to correct their technical proposals. The court cannot find that there was not a rational basis for the Navy to take the limited corrective action.

Having established that the Navy was entitled to take limited corrective action, the court notes that PAE and JIRS both repeatedly and strenuously argue that the purpose of the limited corrective action was to solely benefit intervenor. Alluded to in the protestors' arguments described above that the offerors were not treated equally throughout the submissions, the protestors also argue that the Navy designed the corrective action to favor Amentum. PAE alleges that "the Navy's corrective action lacked a rational basis because it departed from the stated evaluation criteria (*e.g.,* deemphasizing the technical factor's weight), suppressed competition on best value and the technical factor, and treated the offerors unfairly and unequally." PAE also argues that "[t]he Navy conducted unfair and unequal discussions." PAE contends "the Navy's cost-only discussions favored Amentum and disfavored PAE. Amentum uniquely benefitted from the cost-only discussions for ODC and rates, giving Amentum opportunities to cure defects and open-ended risk," and "[t]he Navy's refusal to conduct discussions regarding technical updates disfavored PAE." In its reply brief, PAE states: "Both PAE and JIRS explained how the Navy's corrective action treated the offerors unequally and unfairly. The Navy and Intervenor disagree. However, the facts confirm that the Navy's limited corrective action favored Amentum and disfavored PAE and JIRS." (internal citations omitted). PAE continues:

> From every angle, the Navy's prohibition on new technical proposals and evaluations favored Amentum. The Navy argues that Amentum had a [redacted] – that could not be resolved during corrective action discussions. Furthermore, Amentum had [redacted] Finally, the Navy repeatedly cited [redacted] Except for noting that Amentum had [redacted], the Navy does not dispute any of these facts. By locking in PAE's technical disadvantage as showcased in the Navy's own SSAC Report, the Navy unfairly favored Amentum and disfavored PAE and JIRS.

(capitalization in original; internal citations omitted).

JIRS went further than PAE and the first argument raised in JIRS' motion for judgment on the Administrative Record is "[t]he Navy's limited corrective action unfairly and impermissibly favors Amentum over JIRS." In its submissions, JIRS argues:

> The Navy's corrective action unfairly allows Amentum to revise *every* aspect of its cost and technical proposals that the Navy identified as a [redacted] and that could be improved, but does not give JIRS a similar opportunity to meaningfully address [redacted] and that could be improved upon to increase JIRS's chances of award. The limited corrective action allows Amentum to address the glaring deficiencies that JIRS identified in the prior protest, including [redacted] But the limited corrective action goes much further and identifies each and every area where Amentum's cost proposal can be improved, regardless of how small or large.

(emphasis in original). JIRS continues: "The Navy's corrective action unfairly permits Amentum to improve its proposal based on every aspect that the Navy identifies as a weakness—including a technical weakness—but does not give JIRS a similar opportunity to revise its proposals and enhance its potential for award." JIRS also argues that "[t]he Navy's discussions with JIRS are therefore tailored to Amentum's proposal, not JIRS's proposal, and do not comport with FAR 15.306(d)(1)."

At the oral argument on the cross-motions for judgment on the Administrative Record on these pre-award bid protests, counsel of record for JIRS argued

> our first and our most fundamental issue, and it's really been our first and most fundamental issue from day one, is that this is not fair. This is unequal. Amentum is -- Amentum's [redacted] is being preserved artificially. They are being given an opportunity to improve where they can stand to improve and we're being denied an opportunity to improve where we can stand to improve. That favors Amentum over JIRS and it is a violation of FAR 15.306(e).

As the above quotations demonstrate, protestors both suggest, although they do not explicitly argue, that the Navy was not acting in good faith when it took the limited corrective action, and that defendant was improperly crafting the limited corrective action to solely benefit intervenor. As the Federal Circuit held in Croman Corp. v. United States:

> The presumption that government officials act in good faith is enshrined in our jurisprudence. Am–Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002). Government officials are presumed to "act 'conscientiously in the discharge of their duties.'" Kalvar Corp., Inc. v. United States, 543 F.2d 1298, 1301 (Ct. Cl.1976) (quoting Librach v. United States, 147 Ct. Cl. 605, 612 (1959)). Courts have always been "loath to find to the contrary," and to induce a court to abandon the presumption of good faith dealing, "requires 'well-nigh irrefragable proof.'" Id. at 1301–02 (quoting Knotts v. United States, 128 Ct. Cl. 489, 492, 121 F. Supp. 630 (1954)). Thus, Croman must offer clear and convincing evidence that the Forest Service did not act in good faith in order to prevail on this issue. Am–Pro Protective Agency, 281 F.3d at 1239–40.

Croman Corp. v. United States, 724 F.3d at 1364. The Federal Circuit in Croman determined "the record simply does not support a showing that the Government cancelled CLINs 21, 22, 27 and 34 of the 2011 Solicitation in bad faith. Croman's speculations that there actually were no budgetary concerns are not enough to overcome the presumption that the Government acted in good faith." Id. The Federal Circuit, therefore, concluded: "Accordingly, Croman has failed to meet its burden to show that the decision to cancel CLINs 21, 22, 27 and 34 of the 2011 Solicitation was in bad faith." Id.

In the above captioned pre-award bid protests, PAE and JIRS similarly speculate about the Navy's motivations regarding the limited corrective action. Although PAE

claimed "[f]rom every angle, the Navy's prohibition on new technical proposals and evaluations favored Amentum," and JIRS claims "[t]he Navy's limited corrective action unfairly and impermissibly favors Amentum over JIRS," it remains to be seen how the Navy evaluates the revised cost proposals and then how the source selection authority makes the final award decision. Even if the limited corrective action gives Amentum a chance to address cost issues in its proposal without giving PAE and JIRS a chance to address technical issues, PAE and JIRS have not provided, at this time, "clear and convincing evidence" that the Navy acted in bad faith when it limited the corrective action. See id. Additionally, as determined above, the limited corrective action, on its face, did not unfairly favor Amentum, as all three offerors have been permitted to submit revised cost proposals.

At this stage of the pre-award proceedings, the court finds it difficult to conclude that the Navy did not have a rational basis for conducting a limited corrective action. The court, however, remains quizzical of a number of actions taken by the Navy and the Department of Justice during the procurement process. The court first notes that, although it was sufficient under the FAR and precedential standards for the Navy to conduct the limited corrective action, it does not mean that was the most advisable or most efficient course of action. Even if the Navy was not obligated to allow all offerors to revise their entire proposals, and only permitted revisions to the cost proposals, it may turn out to have been much more expedient for the Navy to have allowed all offerors to submit completely revised proposals at this stage of the procurement. As explained by defendant's counsel of record at the oral argument:

> So once this protest is resolved, assuming it gets resolved in the Navy's favor and the Protestors' motions for judgment on the administrative record are denied, the Navy will then go on to conduct a cost realism analysis with those revised cost proposals that it just received in December and then the source selection advisory counsel, the SSAC, will review those new cost proposals and prepare a recommendation for the source selection authority and then the source selection authority will be prepared to issue a new award decision. So the timeline of that is about three to six months after this protest is resolved and the Navy can begin reviewing those revised cost proposals.

Even under the Navy's most optimistic timeline, the earliest the Navy "will be prepared to issue a new award decision" appears to be Fall of 2021. The above captioned protests were filed in December 2020, the same time the revised cost proposals were due. If the Navy had allowed the offerors to submit completely new proposals, the Navy might have been in a position to make an award much earlier without the second round of bid protests. Furthermore, the Navy's decision only to permit revisions to the cost proposals maintains the odds that either PAE or JIRS, or both, will file post-award bid protests if the Navy again makes the award to intervenor after restricting the revisions to the proposals to cost only. As noted above, both PAE and JIRS complain that the limited corrective action was unfair and only benefited Amentum. PAE argued "the Navy's cost-only discussions favored Amentum and disfavored PAE," and JIRS argued "[t]he Navy's

limited corrective action unfairly and impermissibly favors Amentum over JIRS." If Amentum is again awarded the AUTEC contract, both PAE and JIRS may well continue to believe that the Navy was intent on making the award to Amentum and react by once again filing protests, this time to the award decision.

Similarly, although PAE argues that "[d]espite the governing regulations and the stated evaluation criteria mandating a cost realism analysis addressing the consistency of proposed costs and technical approaches, the Navy's limited corrective action – allowing only cost proposal updates, not new technical proposals – rendered a lawful cost realism analysis impossible," the court cannot make that determination before the Navy has an opportunity to perform the cost realism analysis after the technical proposals and revised cost proposals are evaluated. The government argues "[t]o the extent PAE seeks to preemptively challenge the Navy's upcoming cost realism analysis, based on new cost proposals that have not yet been evaluated, such a challenge would be unripe." The court, however, is mindful of PAE's concerns, and it is one that the Navy will have to account for in any subsequent evaluations and potentially post-award bid protests in this court.

Additionally, the protestors and the court noted the length of time the procurement process has taken so far. To briefly summarize, the Navy originally issued the solicitation on April 19, 2018, and subsequently issued a series of amendments. Initial proposals were due by July 6, 2018, and JIRS, PAE, and Amentum all submitted timely proposals. On July 31, 2019, the Navy subsequently opened discussions with JIRS, PAE, and Amentum. On January 22, 2020, all three offerors submitted their final proposal revisions. On August 24, 2020, the Navy ultimately made the original award to Amentum. PAE and JIRS both protested the Navy's award to Amentum, first to the GAO and then filed bid protest complaints in this court, both on October 5, 2020. After a hearing on November 2, 2020 to discuss defendant's notice regarding corrective action, the court dismissed the first round of bid protests in Case Nos. 20-1324C and Case 20-1325C, without prejudice, and the Clerk of Court entered judgment in both bid protests on November 2, 2020. The Navy then sent a December 7, 2020 letter regarding the limited corrective action, after which PAE filed another bid protest on December 21, 2020, and JIRS subsequently filed another bid protest on December 22, 2020. The above timeline reflects a very long procurement process, which, as noted above will stretch, at a minimum, into the Fall of 2021, or three and a half years since the initial solicitation was issued and more than a year and a half since the final proposal revisions were submitted by the offerors. A consequence of not permitting revised technical proposals after such a lengthy period of time is the increased likelihood that the Navy will have to issue modifications to the awarded AUTEC contract. Additionally, it would seem questionable that any of the three potential awardees could perform to the technical specifications first identified in the solicitation issued on April 19, 2018, or, potentially, even their final technical proposals submitted on January 22, 2020. Decisions to issue modifications could increase costs for the Navy and potentially lead to claims at the end of contract performance. Even now, the Navy has not expressed an urgency to resolve the current, pre-award bid protests. At the oral argument, defendant's counsel of record explained:

So currently, there is an ongoing performance by PAE, who is the incumbent. They are performing on a contract that expired in September of last year and they were granted a sole source bridge so they can continue performing while these protests are going on. And that bridge currently expires on May 23rd of this year, so in a couple months. The Navy is contemplating doing another bridge. That would depend on how this protest shakes out. But they are contemplating doing that right now.

Therefore, it appease that further bridge contracts are contemplated. Additionally, PAE raised issues related to COVID in its motion for judgment on the Administrative Record, claiming that

[s]ince the last technical proposal update in January 2020, the Department of Defense has acknowledged major impacts to facilities, travel, and workforce options due to the COVID-19 epidemic. Given the limited housing on the AUTEC base, many Navy and contractor personnel must navigate heightened travel burdens, base-access and movement restrictions, and additional health precautions in the AUTEC housing and dining facilities These COVID-19 impacts mean that labor mix and workload data from 2019 and earlier no longer reflects the multitude of changes in 2020.

In response, the government stated "it is not yet known when performance on the AUTEC contract will ultimately begin, as performance dates 'may be adjusted to reflect the date of award.'" (internal citation omitted). Moreover, defendant argues, "[b]ecause the date of performance is unknown, the Navy cannot presently determine whether, and to what extent, the COVID-19 pandemic might eventually impact the awardee's performance." Defendant's counsel reiterated the government's position at the oral argument stating:

COVID has certainly had an effect on contractors generally. The issue here, of course, is that we don't know when an awardee would begin performing under this current AUTEC contract. As I said, it's still going to take three to six months for the Navy to even issue an award decision and that's three to six months after this protest is resolved. . . . It could be that by the time an awardee is selected and is ready to begin performing on this new AUTEC contract, there will not be any significant COVID-related changes that would require any changes to the procurement at all. And so, you know, it's one of those things we just don't know quite yet.

(capitalization in original).

Nevertheless, as noted above, the Federal Circuit has specifically stated "[e]ven if we agreed with Appellees that the Army had other, better options available, we nevertheless conclude that the option it chose was reasonable, and we therefore refuse to 'substitute [our] judgment' for that of the Army by determining whether there was another, perhaps preferable solution." Dell Fed. Sys., L.P. v. United States, 906 F.3d at 998–99 (quoting R & W Flammann GmbH v. United States, 339 F.3d at 1322). Under the unique facts of these pre-award bid protests, including the multiple rounds of previous

discussions the Navy held with the three offerors on both technical and cost issues, the option to take limited corrective action recently was not irrational. Therefore, the court will not stand in the way of the Navy proceeding with the corrective action on a limited basis at this pre-award stage of the procurement. The court reiterates that this conclusion is limited to the particular facts of these bid protests.

## CONCLUSION

As described above, although the court remains concerned about the procurement process to date under review in this Opinion, at this time, prior to the agency's revised evaluations and contract award, based on the facts as they currently exist in the record before the court, the court does not find the Navy's actions to take limited corrective action to rise to the level of arbitrary or capricious. PAE's and JIRS' motions for judgment on the Administrative Record and motions for pre-award injunctive relief in Case No. 20-1925C and in Case No. 20-1954C are **DENIED**, and defendant's and intervenor's motions for judgment on the Administrative Record are **GRANTED**. The Clerk's Office shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED**.

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**
